National Council of the Junior Order of United American Mechanics, Appellant, *v.* Allegheny County Health Department.

Argued November 10, 1969. Before WATKINS, MONT-GOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ. (WRIGHT, P. J., absent).

*Alan Berman*, with him *Rothman, Gordon, Foreman & Groudine*, for appellant.

*James Victor Voss*, Assistant County Solicitor, with him *Francis A. Barry*, First Assistant County Solici-

tor, and *Maurice Louik,* County Solicitor, for Allegheny County Health Department, appellee.

*Alan S. Penkower,* with him *R. Stanton Wettick, Jr.,* for appellees.

OPINION BY MONTGOMERY, J., December 10, 1969:

This appeal by The National Council of the Junior Order of United American Mechanics of the United States of North America (Owner), owner of property at 627 Duff Street in the City of Pittsburgh, is from an order of Hon. SILVESTRI SILVESTRI, Judge of the Court of Common Pleas of Allegheny County (Civil Division), refusing its petition for the recovery of rentals paid to the Mellon National Bank & Trust Company (Bank), as escrow agent, by its tenants, Reuben Roberson et ux., the intervenors, after said property had been declared unfit for human habitation by The Allegheny County Health Department (Department) on January 25, 1968, and returning them to the intervenors.[1] The Bank had been designated as the escrow agent for funds withheld by tenants of real property under the "Rent Withholding" Act of January 24, 1966, P. L. (1965) 1534, as amended, 35 P.S. §1700-1 (p.p.).

This case (Roberson II) is a sequel to the case decided by this Court in an opinion filed on January 8, 1969. *National Council of the Junior Order of United American Mechanics v. Roberson,* 214 Pa. Supe-

[1] The intervenors were made parties defendant in this action by order of the lower court, which considered them to be indispensable parties. However, they did not file a petition to intervene, an answer to the Owner's petition, or a claim for the return of the rentals paid by them to the Bank. Furthermore, the Department did not file a claim for the return of such funds to the Robersons; nor is there in this record any order or direction by the Department that the Bank return the rentals to the Robersons.

rior Ct. 9, 248 A. 2d 861 (1969), allocatur refused, February 19, 1969 (Roberson I). In Roberson I we permitted the execution of a writ of possession for the premises aforementioned which had been issued on a judgment in ejectment for possession of the premises. The judgment in ejectment was entered amicably, as authorized by the lease, because of the default of the Robersons in paying the rent for May and June, 1968, to the Bank when it was due.

The funds presently in the escrow account consist of rent for the months of February, March, and April, 1968, totaling $195, which had been paid before June 24, 1968, the date when the judgment was filed, and $780 for subsequent months. Most of the latter funds were paid into the escrow account under the several orders of the lower court which granted stays of execution on the writ of possession, all of which stays were granted over the objection of the Owner. The Owner seeks recovery of the entire amount paid into the escrow account.

The Robersons were tenants under a month-to-month written lease which provided for payment of a monthly rental of $65 in advance and contained a provision requiring a sixty-day notice for termination. After having been occupied by the Robersons for several months, the premises were declared by the Department to be unfit for human habitation on January 25, 1968. Thereafter the Robersons continued to occupy the premises until a date subsequent to January 8, 1969, and paid their monthly rentals into the escrow account during their occupancy. Of said payments, $390 (or $325, as found by the lower court) accumulated in the account up to July 25, 1968, which was the end of the initial six-month period following the first declaration of unfitness by the Department, and an additional $585 thereafter. During the initial six-month period, the

Owner expended the sum of $488.38 for labor and materials to effect repairs to the premises. However, the Department did not at any time certify the premises as being fit for human habitation. On the contrary, the premises were recertified as unfit by the Department on July 25, 1968.

Although the lower court ordered the return of the escrow funds to the Robersons, the question of their ultimate right to them was not before that court and need not be decided by us. The only question presented in this case is whether the Owner is entitled to recover part or all of these funds under the Rent Withholding Act. For the reasons hereinafter set forth, we conclude that it is not entitled to any part of them under the Act and that, consequently, its petition and rule were properly dismissed and discharged. However, we do not decide the issue, whether the funds should be returned to the Robersons. They have made no claim to them under the Rent Withholding Act; the Department has made no order for their return (if it has the authority to do so, which we do not here determine) ; and other proceedings must be resorted to for the recovery of money paid by mistake.

The Owner bases its claim on the admitted fact that it expended $488.38 for material and labor to repair the premises during the initial six-month period following the declaration of unfitness, which amount is more than the rentals paid for that period. It assigns another reason in support of its claim for the rentals paid after the initial six-month period. It contends that they were paid into escrow without the protection of the Act; and as authority therefor it cites our decision in Roberson I, supra.

It is not disclosed whether the sum paid for repairs was expended before the defaults in payment of rent,

which led to the judgment in ejectment, or thereafter. However, it is immaterial when the expenditures were made. If they were made subsequent to the date when the judgment in ejectment was entered, they were made at a time when the Act no longer had any effect on the landlord-tenant relationship since it had been terminated by the default of the tenant and the subsequent entry of judgment for possession. If the repairs were made before the date of its entry, we find no provision in the Act to entitle an owner to recover rentals paid into escrow either by making partial repairs or by making repairs only to the limit of the rentals, or to any extent less than is necessary to restore the leased premises to the reasonable standard of fitness established by the Department, regardless of the amount of the expenditure. Therefore, the Owner is not entitled to recover the rentals for the months of February, March, and April, totaling $195, under the Rent Withholding Act, since it did not sufficiently repair the premises to meet the aforesaid standard; nor the rentals paid subsequently to the entry of judgment since they were improperly paid into the escrow account.

The order of the lower court is affirmed in the particular that it denied appellant's petition and discharged the rule for recovery of the money paid by the Robersons to the escrow agent; and said order is reversed insofar as it orders the return of said money to the intervenors, without prejudice to either party to proceed in other appropriate proceedings for the recovery of same as their rights may be adjudicated therein.

Appellant to pay costs.

HOFFMAN, J., concurs in the result.

WRIGHT, P. J., did not participate in the consideration or decision of this case.

CONCURRING AND DISSENTING OPINION BY CERCONE, J.:

These are two separate appeals which, because they involve the same material facts and issues, were consolidated for purposes of consideration and determination by this court.

One of the appellants, the National Council of the Junior Order of United American Mechanics of the United States of North America, is the owner of certain property located at 267 Duff Street, Pittsburgh, Pennsylvania, leased to and occupied by Reuben Roberson and Minnie Roberson, his wife.

The other appellant, Stanley Klein, is the owner of an apartment building located at 2505 Fifth Avenue, Pittsburgh, one of the apartments being leased to and occupied by Louise Brunson.

These two properties were declared and certified as unfit for human habitation by the Allegheny County Health Department on January 25, 1968 and June 20, 1968, respectively. After the said certification, the tenants paid their rent in escrow in accordance with the Rent Withholding Act of January 24, 1966, P. L. (1965) 1534, as amended, 35 P.S. §1700-1. The money was paid into escrow for a period of six months. At the end of the said six-month period the property was recertified as unfit for human habitation and the tenants continued to pay their rent into escrow. The appellant-owners then petitioned for a rule to show cause why all the escrow deposits of their respective tenants should not be paid to them. The Board of Health filed Answers, the tenants were made Intervenors, and by stipulation of the parties the court determined the matter upon the pleadings. It was the lower court's decision that all the monies be returned to the tenants.

The owners have appealed, making a two-fold argument. They contend (1) they are entitled to be reimbursed from the first six months' rent paid in escrow

for the repairs they made to the leased premises; and (2) they are entitled to all the rent paid after the initial six-month period because the Rent Withholding Act does not authorize such escrow payments for more than one six-month period.

We must admit at the outset that the Act in question is not clear and that much legal and economic travail might have been avoided had the legislature amended it as indicated in the concurring opinion of Judge HOFFMAN in the case of *National Council of the Junior Order of United American Mechanics v. Roberson*, 214 Pa. Superior Ct. 9 (1969). The action in that case involved the same parties present in one of the appeals now before us,[1] and Judge HOFFMAN raised questions such as those raised here when he observed:

"This case leaves unresolved some of the very difficult questions raised by the statute. For example, it is unclear from the face of the statute: (1) whether a landlord of a building certified as unfit for human habitation may refuse to renew the lease arrangement of a tenant who has paid his rent in a timely fashion, (2) under what conditions and authority may moneys deposited in an escrow account pursuant to the statute be used to effect repairs of the dwelling premises, (3) may escrow payments be made indefinitely until the dwelling is sufficiently repaired with periodic six months disbursements of the accumulated rents to the contributing tenants to the escrow account.

"These questions as well as others bound to arise are best settled by future legislative amendment, although in the absence of such action, it will be the duty of the courts to frame a solution based upon their interpretation of the statute as written. . ."

---

[1] The majority I believe unnecessarily projects the facts of that case into this one since no issue was raised as to the effect of the escrow payments involved in that action on the expenditures here involved.

No legislative amendment having been forthcoming, we must, therefore, interpret the statute as written.

We first direct our attention to the contention that the owners are entitled to reimbursement from the first six-months escrow payments for the cost of repairs made by them, which repairs failed to move the Board of Health to certify the dwellings as fit for human habitation. To answer this contention, it is necessary, of course, to study the language of the statute, which reads:

". . . any monies deposited in escrow on account of continued occupancy shall be payable to the depositor, except that any funds deposited in escrow may be used for the purpose of making such dwelling fit for human habitation and for the payment of utility services for which the landlord is obligated but which he refuses or is unable to pay." The lower court held that this provision means that at the end of the six-month period if the premises are still unfit for human habitation, it is wholly within the discretion and authority of the Allegheny County Board of Health to determine whether the moneys shall be paid either to the tenant or to the landlord for the purpose of having the repairs made. I believe that the Act might be properly and reasonably determined to vest such discretion in the Board of Health if a contest arose between tenant and landlord when both had made repairs to the premises and each sought reimbursement for those repairs from the escrow fund. But in the cases now before us only the landlords have made repairs.

The Majority apparently holds that, aside from any question of discretion on the part of the Board of Health, a landlord is not entitled to reimbursement for repairs which are insufficient to cause the premises to be certified as fit. I would respectfully disagree with such holding. It is my opinion that a rea-

sonable interpretation of the Act, keeping in mind its purpose and intent, that is, to have the premises repaired and to make them fit for human habitation, would require reimbursement to the landlord from the escrow fund even where the repairs are not sufficient to convince the Board of Health to certify the premises as fit. To interpret the Act otherwise would be to defeat its very purpose, for large and sizeable expenditures required to make the premises fit might not be undertaken but repairs at least to the extent of the rentals paid in escrow will be virtually assured if the landlord is entitled to reimbursement from the escrow fund. It would make no difference, in my opinion, whether the repairs are to a single-family dwelling or a multiple-family dwelling (as in one of the cases now before us), so long as the repairs, though not made to his particular apartment, in some way benefit the tenant.

It must be kept in mind that, as noted in the prior case of *National Council of Junior Order of United American Mechanics v. Roberson,* supra, an Act such as the Rent Withholding Act is penal in nature and an interference with the landlord's rights, and therefore to be strictly construed. The Act did not relieve the tenant from the payment of rent or any other obligation of his lease, and as most leases require the tenant to assume the burden of repairs and maintenance, to permit the statute to be construed as requiring the landlord to assume the cost thereof without reimbursement from rents in escrow to the extent at least of improvements made would present a constitutional question of impairment of the obligation of contract.

The necessary strict interpretation of the Act also requires support of the view that the escrow payments cannot extend beyond the six-months' period. In the prior *National Council* case the owner sought to evict the tenant and the tenant based his effort to stay the

eviction on that provision of the Rent Withholding Act that "No tenant shall be evicted for any reason whatsoever while rent is deposited in escrow." On appeal from the lower court's refusal to interfere with the eviction, this Court affirmed, holding:

"We find nothing in the Act which provides for a continuation of the privilege of the tenant to pay his rent into the escrow account or to occupy the premises beyond the six month period set forth in the Act. We are, therefore, constrained to conclude that the final provision of the Act, 'No tenant shall be evicted for any reason whatsoever while rent is deposited in escrow', is applicable only during that six month period, and not thereafter.

"Since statutes of this kind are penal, in that they deprive the landlord of rights he would otherwise be entitled to have enforced, they are strictly construed and not extended so as to grant to the tenant any right not expressly provided for." The lower court held this decision inapplicable to the cases now before us because the premises in these present cases had been recertified as unfit for human habitation. Since this Court in the above case very clearly held "We find nothing in the Act which provides for a continuation of the privilege of the tenant to pay his rent into the escrow account or to occupy the premises beyond the six month period set forth in the Act" it was implicit in that holding that no recertification of unfitness could so extend the escrow payments beyond the six-month period. The Act is completely silent and makes no provision for recertification at the end of the six-month period; it makes no reference to more than one six-month period; it does not refer to or provide for "any" six-month period, which would clearly reveal that more than one six-month period was intended.

The lower court holds that not to permit the escrow payments to continue so long as the premises are certified as unfit for human habitation "would allow a landlord to do nothing to improve his premises for the initial six-month period, and then free his building from the sanctions of the Rent Withholding Act. We refuse to ascribe such an intention to the drafters of this important piece of legislation." To interpret the statute as permitting continuing recertification of unfit premises every six months and allowing escrow payments to be returned every six months to the tenant would be to defeat the legislature's intent to bring about an improvement of the property and of dwelling conditions. The motives of promoting good health and sanitary conditions and the prevention of ghettos and run-down areas are not in any way achieved by permitting, and, in fact, inducing by promise of a return of the rent, continued habitation of dwellings certified as unfit for human habitation. It certainly was not the intent of the legislature to encroach upon and restrict the existing power of the Building Inspector to cause such property either to be put in habitable condition or to be condemned. If at the end of the first six months the landlord has not taken steps to improve the premises as to make them fit for habitation, then condemnation, and not continued occupation by the tenant rent-free, should be ordered by the Health Authorities. It is true that such condemnation may create the problem of securing other suitable housing for the tenants, but that problem should not and cannot be avoided by interpreting a statute beyond its terms and purpose to mean that a tenant may continue, and, in fact, be induced to continue, to reside in premises certified as unfit for human habitation. The legislature could not have intended to solve the housing problem by the expedient of continued habitation with its consequent detrimental effect upon the tenants' health and upon

the social and economic character of the area in which the property is located.

It would also seem that if the premises, though certified as unfit for habitation are permitted, nevertheless, to remain inhabited beyond the six-month period, the landlord could very well argue that if it can continue to be so inhabited it must not be unfit for habitation and therefore he should be permitted to collect rent for the tenant's occupancy.

If the property is in fact unfit for habitation it should not continue to be inhabited beyond the six-month period provided for in the statute; there is nothing in the Act which indicates the legislature intended to permit such occupancy to continue upon recertification of unfitness every six months.

As to the question: Who is entitled to the rents improperly paid into the escrow account after the six-month period? the answer is that as to said payments, the terms of the lease entered into between the parties govern, and that lease not being the subject matter of the litigation now before us, which litigation is based solely on the rights of the parties under the Rent Withholding Act, we must direct the parties to pursue their rights under their respective leases. I thus find it unnecessary to dispute the Majority's observation that the tenants have not made claim to the fund in question.

I therefore dissent from and concur in the decision and opinion of the Majority of this court to the extent stated.