448 A.2d 1379

**John JULIANO**

v.

**Mabel STRONG, Appellant.**

Superior Court of Pennsylvania.

Argued April 15, 1980.

Filed Aug. 6, 1982.

Petition for Allowance of Appeal Denied Jan. 20, 1983.

Nikki Ann Tufano, Pittsburgh, for appellant.

Michael H. Steinberg, Pittsburgh, submitted a brief on behalf of appellee.

Before PRICE, BROSKY and MONTGOMERY, JJ.

PRICE, Judge:

Appellant, Mabel Strong, appeals from that portion of an order of the Court of Common Pleas of Allegheny County directing that rental payments escrowed pursuant to the Rent Withholding Act[1] (hereinafter "the Act") should be paid to appellee, John Juliano, appellant's landlord at the time of the instant dispute. For the reasons that follow, we affirm the subject order.

On May 15, 1979, appellant was advised that she was eligible to withhold rent because the apartment in which she was a tenant was unfit for human habitation. Being without the financial means to bring the apartment into compliance with the requirements promulgated by the Department of Health, appellee placed the subject property up for sale and commenced an action before a district magistrate to terminate the tenancy, alleging as a reason therefore the need to make extensive repairs, presumably to enhance the marketability of the property. Process was served on July 3, 1979 and, on August 13, 1979, appellant having failed to appear, a default judgment for possession was entered. The landlord-tenant relationship was thus terminated for reasons other than nonpayment of rent and no appeal was taken.

1. Act of January 24, 1966, P.L. 1534 § 1, *as amended* August 11, 1967, P.L. 204 § 1, June 11, 1968, P.L. 159, No. 89 § 2, 35 P.S. § 1700–1.

Thereafter, on August 30, 1979, appellant's attorney presented to the court of common pleas a petition to open the judgment of possession entered by the district magistrate.[2] Perceiving that it lacked subject matter "jurisdiction to direct that a judgment before a district justice be opened," slip op. at 2, the trial court declined to entertain the petition. Nevertheless,

[i]n spite of the Court's statement that it was without subject matter jurisdiction to entertain the petition of Strong, Juliano volunteered, as a humanitarian gesture, that he would be willing to permit Strong to remain in the premises even though he had an established legal right to immediate possession. Following this gesture of Juliano, Strong's counsel agreed to the entering of a consent order by [the] Court whereby the parties agreed that there would be no eviction of Strong from the premises for a period of thirty (30) days; that Strong would bring no further actions before District Justice Sparrow; and, that in the event Strong failed to vacate within the thirty (30) days [the] Court (upon Juliano's appearing before the Court and requesting it) would issue a writ of possession.

Slip op. at 2.[3] At the conclusion of the hearing which resulted in the consent agreement, appellee requested the payment to him of rental payments that had previously been paid into an escrow account pursuant to the act. Although appellant objected to this request, the trial court added the following directive to the consent order: "Eo die, money held in rent escrow to be paid to John Juliano forthwith." Order of Court, August 30, 1979. This appeal followed.

2. Significantly, appellant testified that she was unaware of any such petition, the hearing thereon, the resulting consent decree, or the appeal to this court. (Vol. 6, N.T. February 1, 1980 at 82–84.) Because appellant has not questioned the actions of her attorney, however, we need not determine whose rights the Neighborhood Legal Services Association was seeking to vindicate, through its representation of appellant.

3. Appellant failed to vacate the premises in accordance with the consent order and, ultimately, a writ of possession was issued.

Appellant argues: that the trial court's directive was in contravention of the terms and purposes of the Act; that appellee should have exhausted his administrative remedies before resorting to the court to seek the rental payments previously placed in escrow, and that the court lacked jurisdiction to order the Department of Health to release the escrowed funds because that department was not a party to the instant dispute. We cannot agree.

The Rent Withholding Act provides as follows:

Notwithstanding any other provision of law, or of any agreement, whether oral or in writing, *whenever* the Department of Licenses and Inspections of any city of the first class, or the Department of Public Safety of any city of the second class, second class A, or third class as the case may be, or *any Public Health Department* of any such city, or of the county in which such city is located, *certifies a dwelling as unfit for human habitation, the duty of any tenant of such dwelling to pay, and the right of the landlord to collect rent shall be suspended without affecting any other terms or conditions of the landlord-tenant relationship,* until the dwelling is certified as fit for human habitation or *until the tenancy is terminated for any reason other than nonpayment of rent.* During any period when the duty to pay rent is suspended, and the tenant continues to occupy the dwelling, the rent withheld shall be deposited by the tenant in an escrow account in a bank or trust company approved by the city or county as the case may be and shall be paid to the landlord when the dwelling is certified as fit for human habitation at any time within six months from the date on which the dwelling was certified as unfit for human habitation. If, at the end of six months after the certification of a ·dwelling as unfit for human habitation, such dwelling has not been certified as fit for human habitation, any moneys deposited in escrow on account of continued occupancy shall be payable to the depositor, except that any funds deposited in escrow may be used, for the purpose of making such dwelling fit for human habitation and for the

payment of utility services for which the landlord is obligated but which he refuses or is unable to pay. No tenant shall be evicted for any reason whatsoever while rent is deposited in escrow.

35 P.S. § 1700–1 (emphasis added) (footnote omitted).

■ In ruling on the constitutionality of the Act in *De-Paul v. Kauffman*, 441 Pa. 386, 272 A.2d 500 (1971), our supreme court stated:

It is evident that the sanctions imposed by the Act bear a real and substantial relationship to its objective of assuring decent and habitable *rental* property. "In *Reitmeyer v. Sprecher*, 431 Pa. 284, 289–90, 243 A.2d 395 (1968), we recognized that a severe housing shortage exists in many parts of the Commonwealth and that much of what housing does exist is in very poor condition. The legislature was obviously attempting [through the Rent Withholding Act] to improve this situation by giving *tenants* the power to put pressure on *landlords* to repair dilapidated, unsafe dwellings." *Klein v. Allegheny County Health Dep't*, 441 Pa. 1, 7, 269 A.2d 647, 651 (1970) (footnote omitted). It seems a matter of common sense that *one in the business of renting real estate for profit* who is faced with the temporary or permanent loss of *rental income* will, in some instances, take steps to avoid that loss.

441 Pa. at 394, 272 A.2d at 504 (emphasis added) (footnote omitted). It seems just as much a matter of common sense that, when, as here, the landlord-tenant relationship has ceased to exist and the "landlord" is no longer "in the business of renting real estate for profit," the continued application of the sanctions imposed by the Act would no longer "bear a real and substantial relationship to [the Act's] objective of assuring decent and habitable rental property." *Id.*

■ The express language of the act thus provides that the landlord's right to collect rent shall be suspended until the occurrence of one of two contingencies: (1) the building is certified as fit for human habitation; or (2) the tenancy is

terminated for any reason other than nonpayment of rent. *Id.* "The purpose of the Act is to restore substandard housing to a reasonable level of habitability as swiftly as possible and to deter landlords from allowing their property to deteriorate into a condition unfit for habitation." *Pugh v. Holmes,* 486 Pa. 272, 287, 405 A.2d 897, 905 (1979). *See, e.g., Newland v. Newland,* 26 Pa. Commonwealth Ct. 519, 364 A.2d 988 (1976); *Palmer v. Allegheny County Health Department,* 21 Pa. Commonwealth Ct. 246, 345 A.2d 317 (1975). Consequently, the first contingency, certification of the building as fit for human habitation, is tailored to meet that objective. The second contingency, termination of the tenancy for a reason other than nonpayment of rent, recognizes that, where the landlord-tenant relationship has been terminated, and the termination of that relationship was not a retaliatory maneuver, the Rent Withholding Act no longer governs the relationship of the parties.

Instantly, the tenancy was terminated as of August 13, 1979, when a judgment for possession was entered in favor of appellee. Since the tenancy was terminated for a reason other than nonpayment of rent, appellee's right to collect rent came out of suspension and the trial judge properly directed payment of the escrowed funds to appellee.[4]

4. Appellant's assertion that appellee should have exhausted his administrative remedies prior to resorting to the courts is without merit. It was certainly appellee's right to place his building up for sale when he realized that he could not comply with the requirements for certification as a habitable dwelling. It was also appellee's right to seek the lawful termination of the tenancy in order to facilitate the sale of his building. Had appellee not made the "humanitarian gesture" of allowing appellant to remain in his building for an additional thirty days, following the entry of judgment in his favor, appellant would not only have been without a place to live but also out of court, since the appeal period had already expired and the petition to open the judgment of possession had been dismissed for lack of jurisdiction. The tenancy was thus at an end and the Rent Withholding Act no longer governed the relationship between appellant and appellee. It follows, therefore, that the administrative procedures promulgated by the Department of Health pursuant to the Rent Withholding Act were likewise inoperative with respect to the relationship between appellant and appellee.

Equally meritless is appellant's contention that the trial court lacked jurisdiction to order the Allegheny County Health Department

Accordingly, the order of the Court of Common Pleas of Allegheny County is affirmed.

BROSKY, J., files a dissenting opinion.

BROSKY, Judge, dissenting:

I respectfully dissent.

Appellant, Mabel Strong, petitioned the trial court to open a judgment ordering Ms. Strong's eviction entered after a hearing before a District Justice. The trial court held that it lacked subject matter jurisdiction to open the judgment. The parties then entered into what appears to be a consent order signed by John Juliano, the landlord, and William M. Parker, a social worker who assisted Ms. Strong.[1] This appeal is made from the consent agreement which was entered into in the trial court. Appellant claims she was wrongfully evicted. She also asserts that the court improperly held that money paid into escrow by appellant under the Rent Withholding Act,[2] which was owing for rent, should have been ordered paid to the appellee. I would affirm the decision of the trial court to evict the appellant and reverse the order of the trial court which directed the money held in escrow be paid to appellee.

to pay to appellee funds escrowed pursuant to the Act. Since the Act "does not purport to be the exclusive tenant remedy for unsavory housing," *Pugh v. Holmes*, 486 Pa. at 286, 405 A.2d at 904, *a fortiori*, the administrative agency that facilitates the Act need not be a party to every landlord-tenant dispute. This is particularly true when, as here, we have already determined that the Act had ceased to govern the relationship between appellant and appellee. The trial judge thus properly ordered the Health Department to pay the escrowed funds to appellee.

1. The appellant does not attack the validity of the agreement on grounds pertaining to the absence of her signature on it. Therefore, I presume her consent to be valid. There is no evidence in the record which indicates Ms. Strong made any attempt to revoke her authorization of Mr. Parker's power to sign the agreement for her. *Sustrik v. Jones and Laughlin Steel Corporation*, 189 Pa.Super. 47, 149 A.2d 498 (1959); *Appeal of Scott Township*, 31 Commw. Ct. 505, 377 A.2d 826 (1977).

2. Act of January 24, 1966, P.S. 1534 § 1, as amended August 11, 1967, P.L. 204 § 1, June 11, 1968, P.L. 159, No. 89 § 2, 35 P.S. 1700–1.

On May 15, 1979, appellant was apprised by the Allegheny County Health Department that the apartment in which she was living was unfit for human habitation. She was then advised that she would be eligible to withhold rent, which she did for the following several months. Juliano, thereafter, filed a landlord tenant complaint with a District Magistrate seeking the eviction of the appellant. A default judgment was entered against the appellant. The consent order from which this appeal was filed resulted from a proceeding in the trial court at which the appellant sought to open the judgment filed against her before the District Magistrate.[3]

The consent order stated:

AND NOW, to wit, this 30th day of August, 1979, it is HEREBY ORDERED and ADJUDGED that eviction of Mabel Strong from the premises at 1114 Bidwell Street, Pittsburgh, PA is hereby stayed for thirty (30) days from the date of this order.

FURTHER, it is ordered that Defendant will bring no further actions or appeals in the Justice of the Peace action LT. 79–167 which was heard before Magistrate Donald Sparrow.

FURTHER, that if Defendant has not vacated from the premises at 1114 Bidwell Street, Pittsburgh PA within thirty (30) days of this order that a writ of immediate possession will issue in favor of Plaintiff upon Plaintiff's appearing before this court and so requesting.

Consent:  John Juliano
             William M. Porter
             BY THE COURT:
             [Ralph H. Smith, Jr., J.]

At the time the consent order was entered, the court also ordered the rent withheld be paid to appellee. An order stated, "Eo die, money held in rent escrow to be paid to John

**3.** There is some question as to whether Ms. Strong properly filed an appeal from the District Magistrate's decision. Nevertheless, this question is rendered moot by the entrance of the parties into a consent order endorsed by the signature of the trial judge. That order was final and entirely separate though incident to the decision of the District Magistrate.

Juliano forthwith." Ms. Strong subsequently failed to vacate the premises by the date agreed to by the parties and the trial court ordered her to vacate the premises.[4]

The Rent Withholding Act states:

Notwithstanding any other provision of law, or of any agreement, whether oral or in writing, whenever the Department of Licenses and Inspections of any city of the first class, or the Department of Public Safety of any city of the second class, second class A, or third class as the case may be, or any Public Health Department of any such city, or of the county in which such city is located, certifies a dwelling as unfit for human habitation, the duty of any tenant of such dwelling to pay, and the right of the landlord to collect rent shall be suspended without affecting any other terms or conditions of the landlord-tenant relationship, until the dwelling is certified as fit for human habitation or until the tenancy is terminated for any reason other than nonpayment of rent. During any period when the duty to pay rent is suspended, and the tenant continues to occupy the dwelling, the rent withheld shall be deposited by the tenant in an escrow account in a bank or trust company approved by the city or county as the case may be and shall be paid to the landlord when the dwelling is certified as fit for human habitation at any time within six months from the date on which the dwelling was certified as unfit for human habitation. If, at the end of six months after the certification of a dwelling as unfit for human habitation, such dwelling has not been certified as fit for human habitation, any moneys

---

**4.** The appellant states in its "*Summary of Argument*":

Further Appellant contends the court's order was directed to the Allegheny County Health Department which was not a party to this action. The Court therefore had no jurisdiction to issue such an order.

Appellant's brief at page six. This argument is misplaced. The appeal in the instant case is from the consent order entered into in the court below. The Allegheny County Health Department was not a party, rather its role was purely as the administrative agency which facilitated the Rent Withholding Act in Allegheny County. Accordingly, the trial court properly directed its order to the Allegheny County Health Department.

deposited in escrow on account of continued occupancy shall be payable to the depositor, except that any funds deposited in escrow may be used, for the purpose of making such dwelling fit for human habitation and for the payment of utility services for which the landlord is obligated but which he refuses or is unable to pay. No tenant shall be evicted for any reason whatsoever while rent is deposited in escrow.

(Footnote omitted.)

The trial court has read the statute as saying that once the tenancy relationship is severed that the landlord shall be paid the rent out of escrow. I do not agree.

In *Klein v. Allegheny County Health Department*, 441 Pa. 1, 269 A.2d 647 (1970), our Supreme Court stated that the Rent Withholding Act is interpreted in the following manner: The first sentence in which the general purpose of the act is stated is to be effectuated by the second and third sentences. Significantly, the court read the statute as saying:

There is no question that if the dwelling is certified as fit at any time during the six months subsequent to initial unfitness certification the landlord is entitled to the money in the escrow account. It is the expectation of the Act (and certainly a reasonable one) that if the premises have not been certified as fit prior to the expiration of the original six months at that six month date either the landlord or the tenant or both will come forward and claim the funds in the escrow account. That claim (or those claims) will require the appropriate agency to reinspect, and unless the premises are certified as fit, there would be generated under Sentence 3 another six months withholding period. This procedure will be repeated at each six month interval. "Certification" (the tenth word in Sentence 3) and "certified" (the sixth word from the end of Sentence 2) refer not only to the original certification but also to the certification that takes place at the end of each six month period. Therefore, under the clear wording of the Act, there is to be not only one six month

withholding period but as many periods as are necessary "until the dwelling is certified as fit for human habitation."

(Footnote omitted), Id., 441 Pa. at 6–7, 269 A.2d 650–651.

The first sentence of the Act establishes the purposes envisioned by the General Assembly. Thus, the tenant is not under a duty to pay rent to the landlord while the rent is properly being withheld under the Act and the landlord has no right to collect that money. If, however, the tenancy relationship is terminated "for any reason other than nonpayment of rent, the duties and rights of the parties once again come out of suspension." *DePaul v. Kauffman*, 441 Pa. 386, 272 A.2d 500 (1971). Thus, the first sentence provides for the duties and rights of the parties while the rent is being properly withheld. When the tenancy is outside the Act, however, that fact alone does not serve to revive the rights and duties of the parties which arose during the period of proper rent withholding.

In *National Council v. Allegheny County Health*, 216 Pa.Super. 37, 261 A.2d 616 (1969); *Klein v. Allegheny County Health Department*, 216 Pa.Super. 50, 261 A.2d 619 (1970), where a tenant withheld rent properly and during the rent withholding period the tenancy was terminated, we said:

It is not disclosed whether the sum paid for repairs was expended before the defaults in payment of rent, which led to the judgment in ejectment, or thereafter. However, it is immaterial when the expenditures were made. If they were made subsequent to the date when the judgment in ejectment was entered, they were made at a time when the Act no longer had any effect on the landlord-tenant relationship since it had been terminated by the default of the tenant and the subsequent entry of judgment for possession. *If the repairs were made before the date of its entry, we find no provision in the Act to entitle an owner to recover rentals paid into escrow either by making partial repairs or by making repairs only to the limit of the rentals, or to any extent less than is necessary to restore the leased premises to the reasonable standard*

*of fitness established by the Department, regardless of the amount of the expenditure. Therefore, the Owner is not entitled to recover the rentals for the months of February, March, and April, totaling $195, under the Rent Withholding Act, since it did not sufficiently repair the premises to meet the aforesaid standard; nor the rentals paid subsequently to the entry of judgment since they were improperly paid into the escrow account.*

(Emphasis added) id., 261 Pa.Superior at 41–42, 261 A.2d 618.

In *Klein*, supra, our decision in *National Council*, supra, was reversed in part. Nevertheless, the Supreme Court held that our decision was correct to the extent that rent money properly placed in escrow was not to be paid to the landlord. Thus, rent money held in escrow was not available to the landlord until there had been a review of the fitness of his property.

The Pennsylvania Commonwealth Court has held in two decisions, *Newland v. Newland*, 26 Pa. Commw. 519, 364 A.2d 988 (1976), and *Palmer v. Allegheny County Health Dept.*, 21 Pa. Commw. 246, 345 A.2d 317 (1978), that rent money held in escrow could not be paid to the landlord until a reinspection of the dwelling certifying it fit for human habitation had been made. While the Act provides that reinspection shall be made at six month intervals, if the problem has been abated prior to the end of a six month interval, the rent shall be paid to the landlord.

The Act provides that where the dwelling is not rendered fit by the end of each six month interval, the landlord shall forfeit that rent money to the depositor, *Klein*, supra, barring the existence of an extension limited to the circumstances found in *Palmer*, supra, and *Newland*, supra. However, I find no decision stating that the rent money properly deposited into escrow shall be paid to the landlord as soon as the tenancy relationship is terminated. To so hold would weaken the very purpose of the Act as envisioned in Sentence 1. *Klein*, supra. Similarly, I am unable to fit any provision in the Act which authorizes the payment of rent money properly held in escrow prior to administrative re-

view of the condition of the dwelling. The Act solely provides for the duties of the tenant and rights of the landlord while rent money is being withheld.[5]

Thus, the trial court wrongfully ordered the rent money paid into escrow paid to the landlord. No other result, it seems to me, can be consistent with the goals envisioned by the General Assembly when the Rent Withholding Act was enacted. Clearly, the purpose of the Act was to protect complaining tenants from eviction while assuring that rent will continue to be paid and declaring that the landlord was not to receive that payment until his building was fit for habitation. This process is triggered by the actions of the health department of a city or county and can only be resolved upon the revitalization of the dwelling.

Certainly, the myopic focus of the General Assembly was upon the suffering tenant. He cannot be forced to vacate the premises purely because he brings to the attention of the authorities that the landlord's building is in a state of disrepair. However, the first sentence of the Rent Withholding Act makes it clear that the tenant cannot oblige the landlord to continue the tenancy relationship after he has terminated it. Thus, the tenant is protected from eviction so long as he does not sever the tenancy.

The broad purpose envisioned by the Act, however, is that landlords are obliged to maintain habitable dwellings. The

---

5. In *City of Harrisburg Housing Code Board of Appeals and Frye v. Reaves*, 48 Pa. Commw. 125, 128, 409 A.2d 484, 485 (1979), the Commonwealth Court interpreted *Klein*, supra, as holding:

[The] Superior Court . . . [has] held that under the [Rent Withholding] Act anything less than a restoration of the leased premises to a condition that meets the reasonable require-ments of fitness for human habitation estab-lished by health and safety departments of a city or county does not give the owner the right to recover payments of rental monies paid into escrow. [Citations omitted.]

While the Commonwealth Court reached this decision where the tenant had not vacated the leasehold, I believe that the interpretation of the Rent Withholding Act presented by that Court articulates clearly the policy envisioned by the General Assembly when it enacted the Rent Withholding Act. That is to say, the Act obliges the landlord to bring his property into habitable condition in accordance with the administrative schedule established under the Act before he is to receive payment of rent held in escrow.

Rent Withholding Act merely provides a vehicle by which the tenant can force the commencement of the revitalization process. The landlord cannot escape this process on the chance the tenant severs the lease. He must complete the rehabilitation of the building. In this light, the individual and societal goals perceived by the General Assembly can be effectuated. The trial court erred in ordering the rent money paid into escrow paid to the landlord.

Accordingly, I would hold that the order of the trial court is affirmed with regard to the appellant's eviction and reversed with regard to its decision to order rent money paid into escrow paid to Mr. Juliano.[6] I am convinced that this decision is required by the purposes of the Rent Withholding Act. We should not endorse, in any way, any action by our trial courts which unreasonably obliges a tenant to terminate a tenancy relationship and consequently results in the formal, though I would hold not substantive, non-compliance with the Rent Withholding Act.

---

**6.** I recognize that several contempt orders issued in this case to persons working for the Allegheny County Health Department and for the Mellon Bank where the escrow account was held. There were no issues raised in this regard and none of the parties in the instant case were held in contempt of court. Thus, I do not address any such claim.