UNITED STATES of America

v.

Anthony STAZOLA.

Appeal of Lavinia GIBBONS and Sylvester Miller.

No. 89–2001.

United States Court of Appeals, Third Circuit.

Argued Dec. 13, 1989.

Decided Jan. 8, 1990.

Michael J. Carroll (argued), George D. Gould, Community Legal Services, Philadelphia, Pa., for appellants.

Robert M. Lipman (argued), Mary E. Crawley, U.S. Atty's. Office, Philadelphia, Pa., for appellee.

Before SLOVITER, SCIRICA and NYGAARD, Circuit Judges.

OPINION OF THE COURT

SCIRICA, Circuit Judge.

This case involves the federal government's effort to evict two tenants from a property forfeited by Anthony Stazola under the criminal forfeiture provision of the Comprehensive Drug Abuse Prevention and Control Act of 1970. 21 U.S.C. § 853 (Supp. V 1987). The district court found that the tenants failed to prove that their possessory interest in the premises extended beyond November 30, 1989, and ordered the tenants to vacate. The tenants appeal the order.

We find that the district court provided the tenants with the same degree of notice and opportunity to be heard as the tenants would have been entitled to under state law. Moreover, we hold that the district court had the authority to order the eviction without recourse to state proceedings under 21 U.S.C. § 853(g) (Supp. V 1987), which authorizes the court to take any action necessary to protect United States' interests in forfeited property. We will affirm the judgment of the district court.

I.

On May 15, 1989, Anthony Stazola pleaded guilty to various drug charges and, in accordance with 21 U.S.C. § 853(a)[1], agreed to forfeit certain of his properties, including the building in which appellants, Lavinia Gibbons and Sylvester Miller, reside. Gibbons has lived in the building's third floor apartment since September 1988. She paid $125 in rent each month to Anthony Stazola until September 1989, when she began withholding payment, which she claims was due to poor conditions in the building and the uncertainty regarding its ownership. Miller, who has

---

1. Section 853(a) provides in part:
   Any person convicted of a violation of this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law—
   (1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;
   (2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation; and
   (3) in the case of a person convicted of engaging in a continuing criminal enterprise in violation of section 848 of this title, the person shall forfeit, in addition to any property described in paragraph (1) or (2), any of his interest in, claims against, and property or contractual rights affording a source of control over, the continuing criminal enterprise.
   21 U.S.C. § 853(a) (Supp. V 1987).

lived in the second floor apartment since 1977, began withholding his $125 per month rent in September 1989, allegedly for the same reasons. Both tenants claim a possessory interest in the property under a month-to-month oral lease.

On August 11, 1989, the district court ordered the U.S. Marshals Service to seize and dispose of the forfeited property, as required by 21 U.S.C. § 853(g), (h).[2] An inspection by the Marshals revealed that the building lacked gas and heat and that the electrical service had been terminated. The Marshals found that the tenants operated their electrical appliances by means of an extension cord connected to an illegal tap into the electric company lines. On October 12, 1989, the Marshals issued a notice to the occupants, demanding their immediate evacuation and warning that failure to comply within ten days would result in eviction. The notice explained that evacuation was necessary because the building lacked heat, gas, and legal electrical service and thus was uninhabitable and a serious fire hazard. Moreover, the notice stated that the Marshals Service would assist the tenants in making arrangements for alternative housing with Philadelphia Family Services.

On November 3, 1989, Gibbons and Miller filed a § 853(n)(2) petition alleging a third-party interest in the forfeited property. Under 21 U.S.C. § 853(n)(2) (Supp. V 1987), any person asserting a legal interest in forfeited property may petition the court for an evidentiary hearing to determine the validity of the alleged interest. The court shall amend the forfeiture order in accordance with its findings if the petitioner proves by a preponderance of the evidence that:

> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
>
> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section. . . .

21 U.S.C. § 853(n)(6) (Supp. V 1987).

For public safety reasons, the government requested an emergency hearing on both the tenants' petition and the government's request for an eviction order. An evidentiary hearing took place on November 20 and 21, 1989, during which appellants' attorney contended that various provisions of Pennsylvania law prohibit the eviction of tenants while the premises are unfit for habitation. The government argued that Gibbons and Miller lacked an interest in the property cognizable under § 853(n)(6) and that eviction was necessary to prevent injury to property and persons living under hazardous conditions. The district court held that Gibbons and Miller failed to prove that they had a possessory interest extending beyond November 30, 1989 and authorized the Marshals Service

---

**2.** Section 853(g) provides:

> Upon entry of an order of forfeiture under this section, the court shall authorize the Attorney General to seize all property ordered forfeited upon such terms and conditions as the court shall deem proper. Following entry of an order declaring the property forfeited, the court may, upon application of the United States, enter such appropriate restraining orders or injunctions, require the execution of satisfactory performance bonds, appoint receivers, conservators, appraisers, accountants, or trustees, or take any other action to protect the interest of the United States in the property ordered forfeited. Any income accruing to or derived from property ordered forfeited under this section may be used to offset ordinary and necessary expenses to the property which are required by law, or which are necessary to protect the interests of the United States or third parties.

21 U.S.C. § 853(g) (Supp. V 1987). Section 853(h) provides in part:

> Following the seizure of property ordered forfeited under this section, the Attorney General shall direct the disposition of the property by sale or any other commercially feasible means making due provision for the rights of any innocent persons.

21 U.S.C. § 853(h) (Supp. V 1987).

to evict the tenants on or after December 1, 1989.

On November 29, 1989, the tenants petitioned this court for a stay of eviction pending appeal. After a telephone conference with counsel, we granted the stay pending further order, requested the government to submit repair estimates, and expedited this appeal.

## II.

■ The tenants contend that 21 U.S.C. § 903 (1982) requires the court to consider state law defenses in determining the validity of interests under § 853(n), and that Pennsylvania law prohibits the termination of a leasehold while the premises are unfit for habitation. Therefore, they claim the district court erred in finding that their possessory interests terminated on November 30, 1989. Moreover, the tenants argue that the district court lacked the power to issue an eviction order in a § 853(n)(6) hearing to determine third-party interests in forfeited property. According to the tenants, the government must proceed in state court under Pennsylvania law to obtain an eviction order.[3]

The government contends that any interest the tenants may have had in the forfeited property could not extend beyond November 30, 1989, even if Pennsylvania notice provisions apply. Moreover, the government argues that provisions under Pennsylvania law and the Philadelphia Code restricting the right of landlords to terminate or evict tenants from uninhabitable premises are not intended to reach situations where the eviction is unrelated to nonpayment of rent and where the owner is not in the business of renting for profit. Finally, the government contends that 21 U.S.C. § 853(g) (Supp. V 1987), which permits the court to "take any action necessary to protect the interest of the United States in the property ordered forfeited," empowered the district court to issue the eviction order.[4]

■ The parties do not dispute that the tenants have resided in the property under a month-to-month oral lease and that the tenants received the Marshals' notice of eviction on October 12, 1989. Whether the tenants' possessory interest terminated on November 30, 1989, involves the application of legal precepts to these facts, and our review of such questions is plenary. The role of state law in § 853(n) hearings and the authority of the court to order eviction under § 853(g) are questions of law and thus our review of these questions is also plenary. *See Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 102–03 (3d Cir.1981).

## III.

■ Section 853 is a criminal forfeiture provision in the subchapter of Title 21 deal-

---

3. The tenants also have claimed that Fed.R. Civ.P. 65 applies to criminal forfeiture proceedings and that the eviction order issued by the district court is defective because the court failed to comply with Rule 65.

Rule 65 provides that a preliminary injunction may not be granted without notice. Moreover, the Rule states that a temporary restraining order may issue absent notice only if it clearly appears from the facts that immediate and irreparable injury will result to the applicant before the adverse party can be heard. Fed.R.Civ.P. 65. In *United States v. Thier*, 801 F.2d 1463 (5th Cir.1986), *modified on other grounds;* 809 F.2d 249 (5th Cir.1987), the Fifth Circuit held that an *ex parte* pretrial restraining order freezing the assets of a defendant charged with drug violations under § 853(e) failed to comply with Rule 65 because the order exceeded the durational limits set out in the Rule. *Id.* at 1469. As the court noted, the requirements of Rule 65 apply to all restraining orders and injunctions issued by United States courts unless Congress indicates otherwise. *Id.* at 1468.

In this case, the district court issued a post-conviction final order, after issuing notice and conducting a hearing attended by the parties and their attorneys. The tenants apparently believe, however, that the government must show irreparable harm in order to obtain an eviction order. The judgment was a final order and thus the government was not required to demonstrate that U.S. interests were threatened with irreparable harm pending a final decision on the merits. Even so, the government presented evidence at the hearing indicating irreparable harm and hardship to United States' interests if an eviction order was not issued.

4. The government also claims that the tenants lack an interest cognizable under § 853(n)(6)(A) or (B). We need not decide this issue because we find that the tenants have no interest of any kind in the property after November 30, 1989.

ing with drug abuse control and enforcement. *See* 21 U.S.C. § 853 (Supp. V 1987). Section 903 provides that "[n]o provision of this subchapter shall be construed as indicating an intent on the part of Congress to occupy the field in which that provision operates ... to the exclusion of any State law on the same subject matter ... unless there is a positive conflict ... so that the two cannot consistently stand together." 21 U.S.C. § 903 (1982). By its terms, § 903 is directed only to state laws controlling drug abuse and enforcement, "the same subject matter" as the subchapter in which § 853 is found. The language of § 903 does not automatically mandate the application of state landlord-tenant laws to § 853(n) determinations. Nonetheless, resort to substantive state law ordinarily will be necessary to make the determination required by § 853(n) of the tenant's "right, title, or interest in the property." *Cf. Braxton v. United States*, 858 F.2d 650, 655 (11th Cir.1988) (absent federal law on point, no reason for not applying Florida law in proceeding under 18 U.S.C. § 1963(*l*) to determine obligations of third party to pay rent to U.S. government on property forfeited under RICO).

In Pennsylvania, a landlord may terminate a month-to-month lease by issuing a written notice ordering tenants to vacate within thirty days. Pa.Stat.Ann. tit. 68, § 250.501 (Purdon Supp.1989). A notice issued in mid-month is effective thirty days after the end of the month. *See Mercer County Agriculture Society v. Barnhardt*, 313 Pa.Super. 206, 212, 459 A.2d 811, 814 (1983) (although landlord in monthly tenancy can serve notice to quit prior to termination of term, landlord cannot require tenant to vacate in middle of next term). A notice that expressly requires an earlier evacuation is nonetheless effective to terminate the lease upon the expiration of the notice period provided by statute. *See id.* at 212–13, 459 A.2d at 815 (notice to quit, ineffective to terminate tenancy on stated date, was effective to terminate on earliest possible date after date stated). If the tenant fails to leave on the date designated in the notice, the landlord may institute an ejectment action, 68 Pa.Stat.Ann.

tit. 68, § 250.511 (Purdon 1965), which in Pennsylvania, is conducted in accordance with the rules relating to civil actions, *see* Pa.R.Civ.P. 1051–1057.

In this case, the October 12, 1989 notice demanded immediate evacuation and warned that eviction would occur within ten days. The government requested an emergency hearing, at which the district court delayed the eviction until after November 30, 1989. Thus, despite the government's demand, the tenants received the full notice period required under Pennsylvania law as well as an opportunity to present their case against eviction.

■ Moreover, provisions under Pennsylvania law and the Philadelphia Code that prohibit termination or eviction while the leased property is uninhabitable do not extend the tenancies of Gibbons and Miller beyond November 30. Under Pennsylvania's Rent Withholding Act, Pa.Stat.Ann. tit. 35, § 1700–1 (Purdon 1977), the rights of the landlord and the obligations of the tenant are suspended until the dwelling is certified as fit for habitation, and eviction for any reason is prohibited in these circumstances while the tenant's rent is escrowed in a bank or trust company approved by the city or county. Under Philadelphia, Pa.Code § 9–804 (1985), an owner may not terminate a lease after a city agency has cited the leased property for code violations unless the tenant has failed to pay rent or has committed a nuisance or waste. Section 7–505 of the Code provides that a landlord who fails to comply with the city's licensing requirements may neither recover possession nor collect rent. *Id.* § 7–505.

These provisions were intended to assure the safety and habitability of rental properties, to curb the practice of evicting tenants in retaliation for complaints regarding unsafe building conditions, and to ensure that process can be served on absentee owners. *See Juliano v. Strong*, 302 Pa.Super. 479, 483, 448 A.2d 1379, 1381 (1982); Philadelphia, Pa.Code § 9–801 (1985); *id.* § 7–501. These concerns are not implicated in the present case where the United States, after acquiring the property through criminal

forfeiture, is obliged by statute to dispose of it, and where the government's effort to evict Gibbons and Miller is unrelated to tenant complaints and nonpayment of rent.[5] Thus, we hold that these provisions of Pennsylvania law and the Philadelphia Code do not apply to this case and do not extend the tenancies of Gibbons and Miller beyond November 30, 1989. *See Juliano,* 302 Pa.Super. at 484, 448 A.2d at 1381–82 (Rent Withholding Act does not govern relationship of parties where owner is no longer in business of renting for profit and tenancy terminated for reason other than nonpayment of rent).

■ The tenants also contend that the district court lacked the authority to issue an eviction order in a § 853(n) hearing because the purpose of such hearings is only to determine the validity of alleged third-party interests in forfeited property. The tenants claim that the government must proceed in state court to obtain an eviction order. We disagree.

In § 853(g), Congress conferred upon the court broad power to take any action necessary "to protect the interest of the United States in the property ordered forfeited." 21 U.S.C. § 853(g) (Supp. V 1987). Because of the hazardous conditions in the building and the high cost of necessary repairs, the government claims that the interests of the United States are best served by the eviction of the tenants and the speedy disposition of the property.

Since the issuance of the district court order, electrical service has been restored, and repairs have been made by an electrical contractor for the Philadelphia Department of Licenses & Inspections that are expected to cost approximately $1000. Nonetheless, the government has submitted estimates to this court for additional electrical, heating, plumbing, and fixture repairs that could cost as much as $12,000.[6] These repairs include: the rewiring of the second floor apartment, the replacement of the oil burner and the hot water heater, repairs to the kitchen and bathroom faucets, the replacement of windows and an exterior door, and repairs to the walls. Tenants claim to have escrowed only $825, none of which was placed in a bank or trust company and Gibbons claims that her share is being held by her sister. Given the congressional mandate to dispose of forfeited property, 21 U.S.C. § 853(h), the government is not required to incur such an expense to restore the building to habitable condition under these circumstances.

We find that the United States' interest in this dangerous property is best protected by evicting the tenants so that the property may be disposed of expeditiously without further cost to the government and before injury to people or property occurs. Section 853(g) authorized the district court to take this action and present circumstances do not warrant disturbing the court's order. Moreover, we conclude that the power vested in the district court under § 853(g) and § 853(n) may be exercised in one proceeding where the parties were on notice that the court would consider both the tenants' § 853(n) petition and the government's request for an eviction order, and where the tenants were afforded the protection they would have received in state court. *Cf. Braxton,* 858 F.2d at 655 n. 12 (appellant does not challenge district court's authority to entertain government's claim to rent payment in proceeding under 18 U.S.C. § 1963(*l*) to determine validity of third-party interests in property forfeited under RICO; given district court's power to protect U.S. interests, it logically follows that district court could grant relief requested by government).

## IV.

We find that the district court did not err in concluding that the tenants lacked a

---

**5.** We note also that the tenants have not escrowed their unpaid rent with a bank or trust company. Moreover, at no point has a city agency issued a notice of code violations. Therefore, it would appear that even if the relevant provisions applied to the federal government as the owner of forfeited rental property, the tenants would have difficulty showing the applicability of these provisions to these circumstances.

**6.** The tenants contend they received an estimate to repair the heating system that was substantially lower than the government's estimate. The tenants have not submitted a copy of their estimate to this court.

possessory interest in the property after November 30, 1989. Moreover, we hold that the district court acted within its power under § 853(g) in issuing the eviction order and we will affirm its judgment.

The district court expressed valid concern for the safety of the tenants in a hazardous building. From the inception of these proceedings, the government has offered to aid the tenants in seeking substitute housing and we are aware that the tenants' attorney has assisted in this regard as well. We urge the government to continue its efforts but we do not believe that the government must serve as landlord in an unheated, unsafe building in which the tenants have no legal rights.