**UNITED STATES of America**

v.

**0.37 OF AN ACRE OF LAND, MORE OR LESS, SITUATED IN the COUNTY OF MIDDLESEX, COMMONWEALTH OF MASSACHUSETTS, and Boott Mills Inc., et al.**

**Civ. A. No. 83–2730–Z.**

United States District Court, D. Massachusetts.

Oct. 21, 1983.

Joseph J. McGovern, Asst. U.S. Atty., D. Mass., Boston, Mass., for plaintiff.

Edward I. Masterman, Cargill, Masterman & Culbert, Boston, Mass., for defendants.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

On September 15, 1983, the United States acquired title through eminent domain to certain real estate, including a historic building in Lowell, Massachusetts. The following day this Court issued an order for delivery of possession to the United States. In violation of that order, a tenant in the building, H & H Paper Co., refused to surrender possession. The United States now seeks a writ of assistance to enforce this Court's September 16 order. The tenant, in turn, moves for injunctive relief, claiming that the Department of the Interior has violated 42 U.S.C. sec. 4625, which requires that relocation assistance be provided to persons displaced by the acquisition of property by a federal agency. The motions were submitted on affidavits and attached documentation.

The tenant claims first that the Department of the Interior has abdicated its responsibilities under the Relocation Assistance Advisory Program and has "failed to provide one iota of assistance." This allegation is directly at odds with the affida-

vits filed by the United States and is belied by the documentary evidence in the case. To the extent that the parties are in conflict as to the facts, therefore, I resolve the discrepancy in favor of the government.

As early as 1978, the National Park Service developed a relocation plan for the Lowell National Historic Park. The defendant in this proceeding was specifically identified at that time as a "major tenant," for whom relocation assistance would be required and for whom "a suitable location will be especially important."

In keeping with this recognition, various officials of the National Park Service engaged in lengthy negotiations with the tenant, spanning nearly a year, in an effort to accommodate the tenant's needs and minimize the burden of relocation. On January 4, 1983, Mr. Thomas Coleman and Mr. Cotter met with the tenant to determine its needs and to explain the benefits available to it under the Relocation Act.

In the months that followed, government officials met with the tenant on numerous occasions. They provided detailed information about the relocation program and about assistance from other government agencies that might be available to the tenant. They contacted government agencies on behalf of the tenant, seeking additional assistance. They advised the tenant of numerous possible replacement sites. They investigated the availability of a site in which the tenant was interested, which was owned by the city of Lowell. They arranged for storage of the tenant's property while a new building was being constructed, or, as an alternative, for moving the tenant to a temporary site where he could continue his business during the interim. Finally, they arranged for advance payments to be made to the tenant to ease the financial hardship of relocation. Although, because of its contractual commitments, the government was unable to accommodate the tenant's desire to remain at its current location until January 15, 1984, it made every effort to minimize the burden of displacement in keeping with its obligations under 42 U.S.C. sec. 4625. The tenant found all alternative sites unacceptable as all required the payment of higher rent than that it had been paying.

The tenant next contends that it did not receive valid notice to vacate as required by federal regulations. It argues that the regulations require that the tenant receive 90 days' notice from the date of acquisition of title by the government. Because title was not acquired until September 15, 1983, the tenant claims that it cannot be forced to vacate the premises until December 14, 1983.

■ The tenant bases its argument on 41 C.F.R. sec. 114–50.308 which states:

No owner or tenant who will become a displaced person will be required to surrender possession of his property before payment is made to him or deposited in the registry of the court. In all cases the owner or tenant shall be given at least 90 days' written notice of the date by which he is required to move from the acquired property.

If the tenant's construction of the regulation is accepted, the first sentence, which requires that payment be made by the government prior to displacing the tenant, would be redundant, since title is not acquired until that time. A more plausible interpretation, which I accept, is that the government must give the tenant 90 days' notice of the date by which he must move, but that in no event can the tenant be required to move until title is actually acquired. This reading is consistent with 41 C.F.R. sec. 114–50.105(a), which states that to be eligible for benefits "[t]he person must have moved ... as a result of the receipt of a written notice to vacate, which notice may have been given *before or after* initiation of negotiations for acquisition of the property." The tenant in this case received written notice on June 16, 1983. The government acquired title to the property in question on September 15, 1983.

The tenant was required to relocate as of that date.[1]

The parties agree that the final disposition of this case requires a balancing of the competing equities. The government asserts that unless it is able to occupy the building by November 1, 1983, it will be unable to perform its obligations under a million dollar contract. As a result, the government will be forced to rebid several contracts at higher costs, with damages estimated at $75,000. In addition, the Lowell National Historical Park, designed for completion by the visitor season of 1985, will be delayed for a year to the detriment of the public at large. On the other side, the tenant, if forced to move prior to January 15, 1983 (at which time a new facility which it is building will be available for occupancy) will be required to move twice, first to a temporary site and then to the new building. Apparently, only one move will be paid for by the government. The rent during this time will be significantly higher than that it is currently paying. At worst, the tenant claims that it will be unable to handle its orders during relocation, and it will lose $100,000 for 1983.

■ Although the hardships faced by the tenant are severe, to a large extent they were aggravated by the tenant itself. The tenant had nine months to find a suitable site for relocation. During that time, it refused to accept the prospect of increased rents and face the reality of relocation, apparently determined to remain in possession of the premises. After 8 months of discussions with the government and after having investigated several sites, the tenant had still not decided whether to rent or build. Construction of the new building was not begun until October 6, 1983, already three weeks after the tenant had been ordered by this Court to vacate the premises. Moreover, information provided by the tenant in a loan application suggests that the tenant may have been overly optimistic in its January 15, 1984 completion date for the building, making additional delays likely.

In light of this continued resistance, the tenant will not now be heard to complain of undue hardship. Accordingly, the writ of assistance shall issue, and the defendant's motion for injunctive relief is denied.

---

1. The tenant was inaccurately informed by Mr. Thomas Coleman in a letter dated January 11, 1983 that it would receive 90 days' notice after title was acquired by the government. This misimpression was corrected by Mr. Paul Cotter in a telephone conversation with the tenant on April 6, 1983. Mr. Cotter made clear that the time to vacate was governed by the date of the notice, not the actual acquisition. Moreover, the tenant was aware of the need to relocate as early as January 4, 1983.