UNITED STATES of America, Plaintiff,

v.

REAL PROPERTY AND PREMISES KNOWN AS 63–39 TRIMBLE ROAD, WOODSIDE, NEW YORK, Defendant.

No. CV–88–1453.

United States District Court,
E.D. New York.

Aug. 10, 1994.

August Sellitto, Asst. U.S. Atty., Brooklyn, NY, for plaintiff.

Betty Aldeco, pro se.

GLASSER, District Judge:

Plaintiff United States of America ("plaintiff" or the "government"), moving by order to show cause, seeks a writ of assistance pursuant to the All Writs Act, 28 U.S.C. § 1651(a), authorizing the United States Marshal's Service (the "Marshal") to take possession of defendant Real Property and Premises Known as 63–39 Trimble Road, Woodside, New York (the "Premises"). Notwithstanding the government's representations that the papers were served on the Premises on July 27, 1994, neither claimant Betty Aldeco (the "Claimant") nor her son, Hugo Castro, submitted papers or appeared at oral argument on August 9, 1994 to show cause why the writ should not be issued. For the reasons described below, the court grants the government's application.

*FACTS*

The underlying forfeiture action was brought against defendant Premises pursuant to 21 U.S.C. § 881(a)(7), alleging that the Premises were used to facilitate trafficking in cocaine in violation of 21 U.S.C. §§ 841 *et seq.* After a bench trial conducted on November 13, 1991, this court ordered the forfeiture of defendant Premises by Memorandum and Order dated September 9, 1992, 812 F.Supp. 335, and judgment dated September 18, 1992. Following entry of the judgment, the Claimant and Juan Carlos Aldeco (deceased), the owners of the Premises, filed a Notice of Appeal to the Second Circuit. The appeal was dismissed by order dated February 18, 1993.

The Marshal took possession of the Premises on April 4, 1993. Declaration of August V. Sellitto, Dated July 25, 1994 ("Sellitto Decl.") ¶ 7. The Marshal permitted Castro to remain on the Premises while they were marketed for sale pursuant to an occupancy agreement, which required Castro to pay $550 per month in rent. *Id.* The government alleges that to date, Castro has paid only $2,000 of the $7,150 owed to the Marshal under the agreement. *Id.* The government further alleges that upon her release from incarceration, the Claimant also took up residence at the Premises. *Id.* ¶ 8.

In January 1994, the Marshal accepted an offer to purchase the Premises, which was memorialized by contract on March 25, 1994. *Id.* ¶¶ 9, 12. On February 3, 1994, Deputy Marshals Craig Donlan and Chris Horemis informed Castro that he should begin to make arrangements to vacate the Premises.[1] *Id.* ¶¶ 9–10. On February 14, 1994, Deputies Donlan and Richard Viets served the Claimant with written notice instructing her and Castro to vacate the Premises within thirty days. *Id.* ¶ 11.[2] Castro and the Claimant failed to vacate the Premises within thirty days, and on May 4, 1994, Deputies Viets and Horemis again visited the Claimant to discuss with her the need to vacate the Premises; the Claimant refused to acknowledge

---

1. It warrants mention that the occupancy agreement expressly provided that it could be terminated by either party upon fifteen days written notice, and that the agreement "shall in no way limit or affect any legal rights of any party regarding the forfeiture of the subject property."

2. Apparently, the Claimant refused to sign an acknowledgment that she received the notice. *Id.* ¶ 11.

that she was required to leave. *Id.* ¶ 13. Deputies Horemis and Tavares returned to the Premises a fourth time on May 17, 1994, and read to the Claimant in Spanish the notice to vacate. *Id.* ¶ 14. At this time, the Claimant "stated that she would not leave the premises and would set fire to the premises." *Id.* ¶ 14.

Finally, the government represents that the proposed purchasers have obtained a mortgage loan and are ready to consummate the sale once the Premises are vacated. *Id.* ¶ 15.

## DISCUSSION

■■■ The All Writs Act, 28 U.S.C. § 1651(a) (the "Act"), provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The Act accordingly authorizes district courts to issue writs of assistance to enforce final judgments. *See Hamilton v. Nakai,* 453 F.2d 152, 157 (9th Cir. 1971), *cert. denied,* 406 U.S. 945, 92 S.Ct. 2044, 32 L.Ed.2d 332 (1972); *cf. United States v. One (1) Douglas A–26B Aircraft,* 662 F.2d 1372, 1373–74 (11th Cir.1981) (writ of assistance pursuant to Fed.R.Civ.P. 70 is "designed 'to deal with parties who seek to thwart judgments by refusals to comply with orders to perform specific acts[.]' ") (*quoting* 12 C. Wright and A. Miller, Federal Practice & Procedure § 3021 (1973)).[3]

Courts have issued writs of assistance in a wide variety of circumstances; while the court has found no cases in which a writ of assistance was issued pursuant to the All Writs Act to effectuate a decree of forfeiture, it has located—and the government has cited—several cases involving circumstances reasonably similar to those in the present case. For example, in *United States v. Young,* 806 F.2d 805 (8th Cir.1986), *cert. denied,* 484 U.S. 836, 108 S.Ct. 117, 98 L.Ed.2d 76 (1987), the district court issued an order evicting a farmer from the real property he had lost ownership of after he failed to meet his loan obligations to the Farmers Home Administration and the bank foreclosed on the property. When the farmer refused to leave the property, the government petitioned the district court for a writ of assistance based on the earlier order of eviction. The Eighth Circuit concluded that the district court properly granted the writ "because the government possessed a valid sheriff's deed and was, therefore, entitled to possession of the property." *Id.* at 807.

Similarly, in *United States v. 0.37 of an Acre of Land,* 577 F.Supp. 236 (D.Mass. 1983), the government acquired title by eminent domain to certain real estate, following which the court issued an order for delivery of possession to the government. A tenant in the subject building refused to surrender possession, and the government sought a writ of assistance to enforce the court's order; the tenant, in turn, claimed that the Department of the Interior had violated its duty to provide him with relocation assistance. Finding that the government had fulfilled its obligations and had provided adequate notice to the tenant that he was required to vacate the premises, the court concluded that a "balancing of the competing equities" tipped in favor of the government, and accordingly issued a writ of assistance. *Id.* at 238.

Finally, in *United States v. Porter,* 1993 WL 95364 (D.Neb. Jan. 7, 1993), the government sought an order ejecting the defendants from two parcels of real property it had acquired ownership to through a tax levy. The court concluded that the government had established its entitlement to an order of ejectment under Nebraska law— which requires a plaintiff to show that he has a legal estate, that he is entitled to possession of the legal estate, and that the defendant unlawfully is preventing the plaintiff from taking possession, *id.* at \*3 (*citing* Neb.

---

3. The government properly does not rely on Rule 70 in seeking a writ of assistance in this case, because that Rule authorizes the court to issue, *inter alia,* a writ of assistance where "a judgment directs a party to execute a conveyance of land or to deliver deeds or other documents or to perform any other specific act and the party fails to comply within the time specified. . . ." The judgment at issue here did not direct "a party" to perform a specific act; rather, it simply ordered the forfeiture of defendant Premises.

Rev.Stat. § 25–2124 (Reissue 1989))—and accordingly granted the government's motion for summary judgment. The court also issued a writ of assistance, concluding that "[t]he plaintiff has shown that the Porters are currently unlawfully occupying the real properties at issue and that the plaintiff has requested the defendants to vacate the properties. To date the defendants have ignored the request. Under these circumstances I find it appropriate to issue a writ of assistance." *Id.* at *4.

It also warrants mention that courts have authorized the issuance of writs of assistance against non-parties to an action, like Castro in this case. As the Second Circuit has stated, "[t]he All Writs Act authorizes a federal court in exceptional circumstances to issue such orders to persons 'who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice.'" *Benjamin v. Malcolm,* 803 F.2d 46, 53 (2d Cir.1986) (*quoting United States v. New York Tel. Co.,* 434 U.S. 159, 174, 98 S.Ct. 364, 373, 54 L.Ed.2d 376 (1977)), *cert. denied,* 480 U.S. 910, 107 S.Ct. 1358, 94 L.Ed.2d 528 (1987); *but see Gibbs v. Kinsey,* 170 A.D.2d 1049, 566 N.Y.S.2d 117 (4th Dep't 1991) (vacating writ of assistance issued against individual who was not joined as party to proceeding; "[e]ven if [individual] has no legitimate interest in the property, [party] cannot evict her without commencing an eviction action or a summary holdover proceeding against her[.]").

Relying on the Third Circuit's decision in *United States v. Stazola,* 893 F.2d 34 (3d Cir.1990), the government further argues that the Claimant and Castro cannot avail themselves of state law protections to avoid eviction. *Stazola* involved the government's efforts to evict two tenants from property that had been forfeited to it under 21 U.S.C.

§ 853. Upon being given notice by the Marshal demanding their evacuation based on the uninhabitability of the premises, the tenants, who claimed a possessory interest in the property by virtue of a month-to-month oral lease, filed a petition pursuant to § 853(n)(2) alleging a third-party interest in the forfeited property. *Id.* at 36. The district court conducted an evidentiary hearing, following which it authorized the eviction of the tenants. *Id.* at 37. The tenants appealed, contending, *inter alia,* that 21 U.S.C. § 903 [4] required the court to consider state law defenses in determining the validity of their interests under § 853(n), and that Pennsylvania law prohibited termination of their leasehold while the premises were unfit for habitation. *Id.* The Third Circuit noted that the language of § 903 did "not automatically mandate the application of state landlord-tenant laws to § 853(n) determinations," *id.* at 38, although resort to state law ordinarily was necessary to determine the tenant's "'right, title, or interest in the property,'" *id.,* as required by § 853(n). In any event, the court concluded that the tenants were afforded the full notice period and the opportunity to present their case that the applicable Pennsylvania law required, and that the provisions of the Pennsylvania law prohibiting eviction from uninhabitable property were not applicable in that case "where the United States, after acquiring the property through criminal forfeiture, is obliged by statute to dispose of it, and where the government's effort to evict [the tenants was] unrelated to tenant complaints and nonpayment of rent." *Id.* at 38–39. Finally, and most significantly for the purposes of the application presently before this court, the Third Circuit rejected the tenants' argument that the government was required to proceed in state court to obtain an eviction order, concluding that the broad power Congress conferred upon the court pursuant to § 853(g) to "take any action necessary 'to protect the interest of the United States in

---

4. Section 903 provides as follows:
   No provision of this subchapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together.

the property ordered forfeited,' " *id.* at 39 (*quoting* 21 U.S.C. § 853(g)), authorized the district court to evict the tenants and permit the government to dispose of the property expeditiously. *Id.*

The court finds the government's reliance on *Stazola* somewhat problematic because the forfeiture underlying the present case was ordered pursuant to § 881(a)(7), which does not have a provision conferring broad powers on the district court analogous to that contained in § 853. However, a recent Eleventh Circuit case—*United States v. Lot 5, Fox Grove, Alachua County, Fla.*, 23 F.3d 359 (11th Cir.1994)—does lend some support to the government's argument that resort to state law is not required. Relying on the Supremacy Clause, and not on § 903, the Eleventh Circuit ruled that § 881(a)(7) preempted the homestead protection provisions set forth in the Florida Constitution. In reaching this conclusion, the court noted that Congress intended § 881(a)(7) to be read broadly, and that the legislative history of the Comprehensive Crime Control Act of 1984—of which § 881(a)(7) is a part—stated that the bill was " 'intended to eliminate the statutory limitations and ambiguities that have frustrated active pursuit of forfeiture by Federal law enforcement agencies,' " and evinced a specific intent to extend civil forfeiture to homesteads. *Id.* at 363 (citations omitted). By analogy, then, the proposition that this court is empowered to issue a writ of assistance ordering the Claimant and Castro to leave the Premises would seem to be a reasonable one.[5]

In brief, the following factors persuade the court that the government is entitled to the relief it seeks: (1) other courts have issued writs of assistance in similar circumstances; (2) courts' powers under the forfeiture laws have been construed broadly in analogous situations; (3) the Claimant and Castro have been afforded ample notice and opportunity to contest their removal and have failed to voice any arguments in opposition; and (4) the equities tip in the government's favor due to their procurement of ready, willing and

able purchasers of the property and due to the Claimant's threat to destroy the Premises.

IT IS HEREBY ORDERED that pursuant to the All Writs Act, 28 U.S.C. § 1651(a), and upon application of the government, the Marshal is hereby empowered to enter and take possession of the Premises by whatever means are at its disposal, to evict all occupants and their personal property, and to dispose of the Premises in accordance with this court's Decree of Forfeiture.

SO ORDERED.

---

5. In any event, it bears noting that New York does provide for the issuance of a writ of assistance pursuant to the Real Property Actions and Proceedings Law, *see* N.Y. R.P.A.P.L. § 221 (McKinney 1979), and that the notice provided by the government would seem to satisfy the requirements under New York law. *See, e.g.,* N.Y. R.P.A.P.L. §§ 711, 713.