**The M/V CAPE ANN, et al., Plaintiffs, Appellants,**

v.

**UNITED STATES of America, General Services Administration, Defendants, Appellees.**

No. 98–2224.

United States Court of Appeals, First Circuit.

Heard Oct. 8, 1999.

Decided Dec. 17, 1999.

Timothy R. McHugh, with whom Hoch & McHugh, was on brief, for appellant A.C. Cruise Line, Inc.

Alan D. Circeo on brief pro se.

Barbara Healy Smith, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, and Julie S. Schrager, Assistant United States Attorney, were on brief, for appellees.

Before TORRUELLA, Chief Judge, BOWNES, Senior Circuit Judge, and LIPEZ, Circuit Judge.

TORRUELLA, Chief Judge.

This case comes to us on appeal from the United States District Court for the District of Massachusetts and calls into question the level of government assistance required by the Uniform Relocation Assistance and Real Property Acquisition Policies Act ("Uniform Relocation Act" or "URA"), 42 U.S.C. § 4622 (1994). Congress passed this Act in 1970 to standardize federal legislation regarding relocation assistance and to provide "fair and equitable" treatment to parties displaced by federal programs. *See Pou Pacheco v. Soler Aquino,* 833 F.2d 392, 395 (1st Cir.1987). The plaintiff-appellant A.C. Cruise Line,

Inc.[1] ("Cruise Line") sought review of an award provided by the General Services Administration ("GSA"), alleging that the relocation assistance it received was far short of fair and equitable treatment. The district court did not agree and granted summary judgment in favor of the GSA. Because we find that the GSA's decision was a reasonable application of the regulations, we affirm.

## I. BACKGROUND

Drawing all inferences in favor of the appellant, we summarize the facts as follows. The Cruise Line conducted its passenger vessel business at the Fan Pier on the Boston Harbor waterfront from 1976 until 1992, when it was evicted in order for the United States to construct the new federal courthouse.[2] Although ultimately unsuccessful, the GSA in coordination with Anthony Athanas, one of the principals of the Fan Pier Land Company, assisted the Cruise Line in its search for a new location, specifically by engaging the services of a harbor consultant and by contacting the World Trade Center. In November 1992, the Cruise Line made a temporary move to Commercial Wharf, even though it would not be permitted to operate its business from that location. Then, in June 1993, the Cruise Line moved permanently to Pier 8, 290 Northern Avenue, Boston.

On February 15, 1993, the Cruise Line filed a claim with the GSA requesting relocation benefits in the amount of $80,017.05 and relocation assistance as provided for in the Uniform Relocation Act. In May 1994, the GSA referred the claim to its Office of the Inspector General for an internal audit and review, which was completed on August 2, 1994. The audit found that $23,903 of the total proposed amount were actual expenses "allocable to the permanent relocation" of the appellant—$3900 for moving expenses and $20,003 for reestablishment expenses. Of the $3900 in moving expenses, $2000 in search related expenses were subject to a $1000 regulatory cap reducing the total moving expenses to $2900. *See* Uniform Relocation Assistance and Real Property Acquisition for Federal and Federally Assisted Programs, 49 C.F.R. § 24.303(a)(13) (1999). Likewise, the reestablishment expenses were reduced to reflect the $10,000 cap. *See* 49 C.F.R. § 24.304 (1999). The final award was $12,900. Subsequent to the audit, a GSA contracting officer increased the award by $452.03, and the Cruise Line received benefits of $13,352.03.

## II. STANDARD OF REVIEW

 We review a district court's grant of summary judgment *de novo* and review the facts in a light most favorable to the nonmoving party. *See EEOC v. Green*, 76 F.3d 19, 23–24 (1st Cir.1996); *Udo v. Tomes*, 54 F.3d 9, 12 (1st Cir.1995). A party challenging GSA's award of benefits under the Uniform Relocation Act bears the burden of establishing that the Agency acted arbitrarily or capriciously or otherwise abused its discretion. *See* Administrative Procedure Act, 5 U.S.C. § 706(2)(A) (1996); *NLRB v. Beverly Enters.–Mass., Inc.*, 174 F.3d 13, 23 (1st Cir. 1999); *see also Pou Pacheco*, 833 F.2d at 398 (applying standard to GSA decision). In applying the arbitrary and capricious standard, the task of the reviewing court is to determine whether the agency considered the pertinent evidence and relative factors and sufficiently articulated an explanation for its action. *See Beverly Enters.–Mass.*, 174 F.3d at 23 & n. 2. So long as the agency's determination is "within the bounds of reasoned decisionmaking,"

**1.** The plaintiffs in this action were A.C. Cruise Line, Inc., three vessels owned by the Cruise Line, the M/V Cape Ann, the M/V Virginia C II, and the M/V Joseph J. Luna; and two guarantors of a Small Business Administration loan to the Cruise Line, Alan D. Circeo (also President of the Cruise Line) and Virginia Circeo.

**2.** The Cruise Line received $25,000 from the Fan Pier Land Company to settle the eviction proceeding.

we may not set it aside, regardless of whether we may have reached an opposite decision. *See Baltimore Gas & Elec. Co. v. Natural Resources Defense Council, Inc.,* 462 U.S. 87, 105–06, 103 S.Ct. 2246, 76 L.Ed.2d 437 (1983).

## III. DISCUSSION

The main thrust of appellant's claim is that the GSA failed to provide adequate relocation assistance, causing the appellant to incur unusual relocation expenses. The appellant primarily challenges the GSA award of relocation benefits on two grounds: (1) the GSA failed to provide the relocation assistance required by law, thereby necessitating appellant's interim move to Commercial Wharf; and (2) the GSA arbitrarily and capriciously reclassified relocation expenses so that they would fall within the regulatory caps for search and reestablishment expenses. 49 C.F.R. §§ 24.303(a)(13), 24.304; *see also* 42 U.S.C. § 4622.

### A. THE INTERIM MOVE

The Uniform Relocation Act provides for payment to "displaced persons" of "actual reasonable expenses" incurred in moving a business, searching for a new location, and reestablishing the business at the new location. *See* 42 U.S.C. § 4622. The Act also requires that the displacing agency take measures to:

> (2) provide current and continuing information on the availability, sales prices, and rental charges . . . suitable locations for business;

> (4) assist a person displaced from a business or farm operation in obtaining and becoming established in a suitable replacement location;

> (6) provide other advisory services to displaced person in order to minimize

hardships to such persons in adjusting to relocation.

42 U.S.C. § 4625(c).

The appellant insists that its interim move was necessitated by the GSA's failure to provide "current and continuing" assistance within the meaning of the statutory scheme. The appellants rely on our opinion in *Pou Pacheco* for the proposition that they are entitled to relief where the government's failure to provide adequate assistance compels the displaced party to move more than once. The GSA in turn responds that it satisfied its obligation of providing assistance under the Act, and that the unusually harsh circumstances surrounding *Pou Pacheco* are not present here.

It is undisputed that the GSA and Anthony Athanas provided some assistance to the Cruise Line before its move. That assistance took the form of hiring a harbor consultant, Martha Reardon, and pursuing a lead on potential berth space at the World Trade Center. The Cruise Line challenges the adequacy of this assistance, claiming, among other things, that before compiling a list of alternative sites, the GSA never consulted the Cruise Line with respect to its business needs, and that after providing the list in December 1991, the GSA did nothing further to keep the list current and actually aid the Cruise Line when it was forced to vacate the Fan Pier in November 1992. The Cruise Line also notes that the World Trade Center was not actually available in November 1992, and would have cost the Cruise Line three times the price of its dock space at Fan Pier. The GSA charges that the Cruise Line failed to avail itself of government assistance when it was offered by either responding to correspondence or attending meetings, focusing instead on legal efforts to resist the move.

■ While we are unable to find an affirmative definition of "current and continuing" assistance in either the statute, the interpreting regulations, or the case law, at least two circuits have concluded

that a displacing agency need not obtain or tender a replacement location to adequately meet its burden under the Uniform Relocation Act. *See Pietroniro v. Borough of Oceanport,* 764 F.2d 976, 980 (3d Cir. 1985); *American Dry Cleaners & Laundry, Inc. v. United States Dep't of Transp.,* 722 F.2d 70, 72–73 (4th Cir.1983); *cf. Katsev v. Coleman,* 530 F.2d 176, 180–81 n. 7 (8th Cir.1976) (holding that URA does not guarantee identical substitute housing for displaced person). In other words, the Third and Fourth Circuits have held that the URA does not require that the agency be successful in its relocation assistance. *See American Dry Cleaners,* 722 F.2d at 73 (relying on the legislative history). Nevertheless, no court has yet determined the minimum amount of assistance required by the Act.

Although we took a broad approach to applying the statutory requirements of the URA in *Pou Pacheco,* our opinion is by no means inconsistent with the view of the Third and Fourth Circuits. *Pou Pacheco* came to us on appeal from a jury trial and court order to compensate the displaced business under the Uniform Relocation Act. The Pou Pachecos were forced to relocate their coffee torrefaction—a facility for grinding, processing, warehousing, and selling coffee. Testimony at trial established that torrefaction equipment slips into disrepair if not regularly used. Although some equipment was maintained after the first move, the torrefaction was never fully operational. After the Commonwealth refused to pay for storage beyond twelve months, Pou was forced to move his equipment a second time, but unfortunately was unable to obtain the necessary permits to run his business from the second location. *See Pou Pacheco,* 833 F.2d at 395.

The district court awarded the Pou Pachecos reimbursement for dismantling expenses, moving expenses, storage rental expenses, search costs, reinstallation of machinery and equipment, and value of new equipment and machinery related to both moves. We found that the jury and the court "were free to fashion the special relief they did," due to the "delicate nature" of the displaced business and the fact that the business remained inoperable. *Id.* at 400–01. We reasoned that the challenged award was sustainable against the "background of strong congressional support for the fair and equitable treatment of displaced persons and businesses, as well as Congress' expressed willingness to depart from traditional notions of valuation and eminent domain." *Id.* at 396.

We were very clear that our decision was limited to the unique facts then before us. We made no finding that the government failed to meet its burden under the URA, and set no standard by which to measure the adequacy of the government's assistance. On that issue, we come to the facts of this case with a clean slate, and agree with our colleagues on the Third and Fourth Circuits that the government need not provide a suitable alternate location, but rather must advise displaced businesses of the availability of such sites. *See American Dry Cleaners,* 722 F.2d at 73.

■ We need not set a threshold level of assistance at this time because it is clear to us in this instance that the GSA satisfied its requirements under the Act. In *Pietroniro,* the Third Circuit found that reference to five alternative locations and several local realtors satisfied the URA, despite the fact that none of the locations were economically feasible. *See* 764 F.2d at 981; *see also American Dry Cleaners,* 722 F.2d at 71 (finding referrals to many possible relocation sites, none of which were acceptable to the displaced business, sufficient assistance under the URA). As in *Pietroniro,* the Cruise Line has not pointed to a suitable location to which it was not referred by the GSA. *See Pietroniro,* 764 F.2d at 982–83. To the contrary, the Cruise Line admits that the GSA's referrals "may fairly represent then-existing available facilities." The record suggests that the Cruise Line was advised of available locations and that assistance was

available, but chose not to avail itself of such services. *See Boston v. United States Dep't of Interior,* 424 F.Supp. 259, 267 (E.D.Mo.1976) (granting summary judgment against plaintiff, who claimed denial of advisory services, when evidence indicated that the plaintiff had been advised of services but chose not to seek them). We empathize with the frustrated sentiments of one Massachusetts District Court judge who noted:

> Although the hardships faced by the tenant are severe, to a large extent they were aggravated by the tenant itself. The tenant had nine months to find a suitable site for relocation. During that time, it refused to accept the prospect of increased rents and face the reality of relocation, apparently determined to remain in possession of the premises.... In light of this continued resistance, the tenant will not now be heard to complain of undue hardship.

*United States v. 0.37 of an Acre of Land,* 577 F.Supp. 236, 238 (D.Mass.1983).

The current case comes to us in a very different posture than *Pou Pacheco.* We review the GSA award under a deferential standard and find no evidence that the GSA's decision to exclude the interim move is arbitrary and capricious or an abuse of discretion. We must therefore affirm the decision of the district court on this ground.

## B. REIMBURSABLE EXPENSES

The Cruise Line requests that it be reimbursed for the following actual expenses that were classified as reestablishment expenses by the GSA:

| | |
|---|---|
| Landing Fees at World Trade Center | $ 1,825.50 |
| Forwarding of Calls | $ 1,500.36 |
| Attorney Search Time | $11,353.50 |
| Marine Sanitary System | $ 3,512.72 |

| | |
|---|---|
| Electric and Telephone Hook Up | $ 2,416.40 |
| Install–Sanitary System | $ 1,019.44 |
| Backflow Preventer | $ 310.00 |
| Deck Plates | $ 1,211.00 |
| Floating Piers | $ 3,800.00. |

These expenses were not reimbursed because they were related to the interim move or exceeded a regulatory cap.[3]

■ The Cruise Line primarily contests the reclassification of expenses. There are two regulatory caps involved: (1) search costs are capped at $1,000 and limited to those that are reasonable and necessary, *see* 49 C.F.R. § 24.303(a)(13); and (2) reestablishment expenses are capped at $10,000, *see* 49 C.F.R. § 24.304. The Cruise Line alleges that the GSA arbitrarily reclassified expenses that were valid uncapped moving expenses so that they would fall within a regulatory cap. We find, however, that the GSA considered the pertinent evidence and factors and articulated an explanation for its action which falls well "within the bounds of reasoned decision making." *Baltimore Gas,* 462 U.S. at 105–06, 103 S.Ct. 2246.

The GSA, relying on the audit, excluded the attorney's search fees because they exceeded the $1000 cap which had already been met, and because the attorney's rate of $135/hr was unreasonable. The regulations entitle the Cruise Line "to reimbursement for actual expenses, not to exceed $1,000, as the Agency determines to be reasonable, which are incurred in searching for a replacement location." 49 C.F.R. § 24.303(a)(13). The provision applies to fees paid to a real estate agent or broker to locate a site, and they could arguably apply to similar fees paid to an attorney. Nevertheless, the provision also permits the GSA to determine whether the fees are reasonable. The appellant has presented no evidence to suggest that the GSA's determination on this matter was

---

3. The audit explains that the landing fees and forwarding calls were related to the interim move. The remaining expenses fell within a regulatory cap. In addition, several other categories of expenses not listed here were determined ineligible for reimbursement, including loss of goodwill, loss of profits, and legal expenses incurred in preparing a claim for benefits. *See* 49 C.F.R. 24.305(c),(d), & (h).

arbitrary and capricious or an abuse of discretion. As the GSA's decision was consistent with the regulations, we defer to the GSA's judgment.

In support of its claim that the GSA arbitrarily reclassified relocation expenses as reestablishment expenses, the Cruise Line relies on the audit itself, which concludes that "$23,903 of the total proposed amount were actual paid or incurred expenses, and were allocable to the permanent relocation of the claimant." We note, however, that the appellant has pulled the first sentence of a paragraph out of context. The remainder of the paragraph indicates that "relocation expenses" is a catch-all phrase that includes both moving expenses and reestablishment expenses, which are subject to different monetary limits. The audit clearly explains that it reclassified $25,184.37 of the expenses as reestablishment expense to be consistent with the regulations. The appellant suggests capriciousness in the audit's decision to reclassify the expenses "for the purpose of maintaining the integrity of the regulatory limitations." However, we read this statement as honoring Congress's intent to limit certain reestablishment expenses which include alterations to the replacement real property such as those listed by the Cruise Line.

The distinction between moving expenses and reestablishment expenses originates with Congress. *See* 42 U.S.C. § 4622. The regulations have interpreted moving expenses to include, among other things:

> Disconnecting, dismantling, removing, reassembling, and reinstalling relocated machinery, equipment, and other *personal property* including substitute personal property described at § 24.303(a)(12). This includes connection to utilities available nearby. It also includes modification to the *personal property* necessary to adapt it to the replacement structure, the replacement site, or the utilities at the replacement site, and modification necessary to adapt

the utilities at the replacement site to the *personal property*.

49 C.F.R. § 24.303(a)(3) (emphasis added). In contrast, reestablishment expenses include:

> (1) Repairs or improvements to the *replacement real property* as required by Federal, State or local law, code or ordinance.
>
> (2) Modifications to the *replacement property* to accommodate the business operation or make replacement structures suitable for conducting the business.
>
> . . . . .
>
> (4) Provision of utilities from right-of-way to improvement on the replacement site.

49 C.F.R. § 24.304(a) (emphasis added). The obvious distinction between moving and reestablishment expenses is whether modifications are made to personal property or to the replacement real property. The GSA's position that the specified expenses are in fact reestablishment expenses is supported by the record. The audit concluded that: (1) the marine sanitary system is an allowable expense under § 24.304(a)(2); (2) the electric and telephone hook up are reestablishment expenses allowable under § 24.304(a)(4); (3) the installation of the sanitary system is covered by § 24.304(a)(2); (4) the backflow preventer is covered by § 24.304(a)(2); (5) installation of deck plates is allowable under § 24.304(a)(2); and (6) installation of floating piers is allowable under § 24.304(a)(2). We find nothing unreasonable in the GSA's application of the regulations.

Instead, the Cruise Line hangs its hat on the argument that under *Pou Pacheco* the regulatory caps are guidelines only, and can be exceeded if there is evidence of unusual expense. Unfortunately, the appellant overlooks the distinction in posture between *Pou Pacheco* and the current case and its effect on the standard of review and deference that we afford to the agen-

68

cy's award. In this case, we may only remand to the district judge if we find that the GSA acted in an arbitrary and capricious manner, not if we believe that the regulations could have reasonably been interpreted differently. In *Pou Pacheco,* we considered whether a jury and court award was sustainable—a related, but substantially different question, involving a different standard of review.

Regardless of the hardship to the Cruise Line that resulted from its forced relocation from Fan Pier, short of evidence that the GSA's decision in this case was arbitrary and capricious, we have no choice but to sustain the district court's decision that the GSA's award was based on a reasonable interpretation of the regulations.

**Affirmed.**