USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit
 ____________________

No. 98-2224

 THE M/V CAPE ANN, ET AL.,

 Plaintiffs, Appellants,

 v.

 UNITED STATES OF AMERICA,
 GENERAL SERVICES ADMINISTRATION,

 Defendants, Appellees.

 ____________________

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. William G. Young, U.S. District Judge]

 ____________________

 Before

 Torruella, Chief Judge,

 Bownes, Senior Circuit Judge,

 and Lipez, Circuit Judge.

 _____________________

 Timothy R. McHugh, with whom Hoch & McHugh, was on brief, for
appellant A.C. Cruise Line, Inc.
 Alan D. Circeo on brief pro se.
 Barbara Healy Smith, Assistant United States Attorney, with
whom Donald K. Stern, United States Attorney, and Julie S.
Schrager, Assistant United States Attorney, were on brief, for
appellees.

 ____________________

 December 17, 1999
 ____________________ TORRUELLA, Chief Judge. This case comes to us on appeal
from the United States District Court for the District of
Massachusetts and calls into question the level of government
assistance required by the Uniform Relocation Assistance and Real
Property Acquisition Policies Act ("Uniform Relocation Act" or
"URA"), 42 U.S.C. 4622 (1994). Congress passed this Act in 1970
to standardize federal legislation regarding relocation assistance
and to provide "fair and equitable" treatment to parties displaced
by federal programs. See Pou Pacheco v. Soler Aquino, 833 F.2d
392, 395 (1st Cir. 1987). The plaintiff-appellant A.C. Cruise
Line, Inc. ("Cruise Line") sought review of an award provided by
the General Services Administration ("GSA"), alleging that the
relocation assistance it received was far short of fair and
equitable treatment. The district court did not agree and granted
summary judgment in favor of the GSA. Because we find that the
GSA's decision was a reasonable application of the regulations, we
affirm.
 I. BACKGROUND
 Drawing all inferences in favor of the appellant, we
summarize the facts as follows. The Cruise Line conducted its
passenger vessel business at the Fan Pier on the Boston Harbor
waterfront from 1976 until 1992, when it was evicted in order for
the United States to construct the new federal courthouse. 
Although ultimately unsuccessful, the GSA in coordination with
Anthony Athanas, one of the principals of the Fan Pier Land
Company, assisted the Cruise Line in its search for a new location,
specifically by engaging the services of a harbor consultant and by
contacting the World Trade Center. In November 1992, the Cruise
Line made a temporary move to Commercial Wharf, even though it
would not be permitted to operate its business from that location. 
Then, in June 1993, the Cruise Line moved permanently to Pier 8,
290 Northern Avenue, Boston.
 On February 15, 1993, the Cruise Line filed a claim with
the GSA requesting relocation benefits in the amount of $80,017.05
and relocation assistance as provided for in the Uniform Relocation
Act. In May 1994, the GSA referred the claim to its Office of the
Inspector General for an internal audit and review, which was
completed on August 2, 1994. The audit found that $23,903 of the
total proposed amount were actual expenses "allocable to the
permanent relocation" of the appellant -- $3900 for moving expenses
and $20,003 for reestablishment expenses. Of the $3900 in moving
expenses, $2000 in search related expenses were subject to a $1000
regulatory cap reducing the total moving expenses to $2900. See
Uniform Relocation Assistance and Real Property Acquisition for
Federal and Federally Assisted Programs, 49 C.F.R. 24.303(a)(13)
(1999). Likewise, the reestablishment expenses were reduced to
reflect the $10,000 cap. See 49 C.F.R. 24.304 (1999). The final
award was $12,900. Subsequent to the audit, a GSA contracting
officer increased the award by $452.03, and the Cruise Line
received benefits of $13,352.03. 
 II. STANDARD OF REVIEW
 We review a district court's grant of summary judgment de
novo and review the facts in a light most favorable to the
nonmoving party. See EEOC v. Green, 76 F.3d 19, 23-24 (1st Cir.
1996); Udo v. Tomes, 54 F.3d 9, 12 (1st Cir. 1995). A party
challenging GSA's award of benefits under the Uniform Relocation
Act bears the burden of establishing that the Agency acted
arbitrarily or capriciously or otherwise abused its discretion. 
See Administrative Procedure Act, 5 U.S.C. 706(2)(A) (1996); NLRB
v. Beverly Enters.-Mass., Inc., 174 F.3d 13, 23 (1st Cir. 1999);
see also Pou Pacheco, 833 F.2d at 398 (applying standard to GSA
decision). In applying the arbitrary and capricious standard, the
task of the reviewing court is to determine whether the agency
considered the pertinent evidence and relative factors and
sufficiently articulated an explanation for its action. See
Beverly Enters., 174 F.3d at 23 & n.2. So long as the agency's
determination is "within the bounds of reasoned decisionmaking," we
may not set it aside, regardless of whether we may have reached an
opposite decision. See Baltimore Gas & Elec. Co. v. Natural
Resources Defense Council, Inc., 462 U.S. 87, 105-06 (1983). III. DISCUSSION
 The main thrust of appellant's claim is that the GSA
failed to provide adequate relocation assistance, causing the
appellant to incur unusual relocation expenses. The appellant
primarily challenges the GSA award of relocation benefits on two
grounds: (1) the GSA failed to provide the relocation assistance
required by law, thereby necessitating appellant's interim move to
Commercial Wharf; and (2) the GSA arbitrarily and capriciously
reclassified relocation expenses so that they would fall within the
regulatory caps for search and reestablishment expenses. 49 C.F.R.
 24.303(a)(13), 24.304; see also 42 U.S.C. 4622.
 A. THE INTERIM MOVE
 The Uniform Relocation Act provides for payment to
"displaced persons" of "actual reasonable expenses" incurred in
moving a business, searching for a new location, and reestablishing
the business at the new location. See 42 U.S.C. 4622. The Act
also requires that the displacing agency take measures to:
 (2) provide current and continuing information
 on the availability, sales prices, and rental
 charges . . . suitable locations for business;
 . . .
 (4) assist a person displaced from a business
 or farm operation in obtaining and becoming
 established in a suitable replacement
 location;
 . . .
 (6) provide other advisory services to
 displaced person in order to minimize
 hardships to such persons in adjusting to
 relocation.

42 U.S.C. 4625(c).
 The appellant insists that its interim move was
necessitated by the GSA's failure to provide "current and
continuing" assistance within the meaning of the statutory scheme. 
The appellants rely on our opinion in Pou Pacheco for the
proposition that they are entitled to relief where the government's
failure to provide adequate assistance compels the displaced party
to move more than once. The GSA in turn responds that it satisfied
its obligation of providing assistance under the Act, and that the
unusually harsh circumstances surrounding Pou Pacheco are not
present here.
 It is undisputed that the GSA and Anthony Athanas
provided some assistance to the Cruise Line before its move. That
assistance took the form of hiring a harbor consultant, Martha
Reardon, and pursuing a lead on potential berth space at the World
Trade Center. The Cruise Line challenges the adequacy of this
assistance, claiming, among other things, that before compiling a
list of alternative sites, the GSA never consulted the Cruise Line
with respect to its business needs, and that after providing the
list in December 1991, the GSA did nothing further to keep the list
current and actually aid the Cruise Line when it was forced to
vacate the Fan Pier in November 1992. The Cruise Line also notes
that the World Trade Center was not actually available in November
1992, and would have cost the Cruise Line three times the price of
its dock space at Fan Pier. The GSA charges that the Cruise Line
failed to avail itself of government assistance when it was offered
by either responding to correspondence or attending meetings,
focusing instead on legal efforts to resist the move.
 While we are unable to find an affirmative definition of
"current and continuing" assistance in either the statute, the
interpreting regulations, or the case law, at least two circuits
have concluded that a displacing agency need not obtain or tender
a replacement location to adequately meet its burden under the
Uniform Relocation Act. See Pietroniro v. Borough of Oceanport,
764 F.2d 976, 980 (3d Cir. 1985); American Dry Cleaners & Laundry,
Inc. v. United States Dep't of Transp., 722 F.2d 70, 72-73 (4th
Cir. 1983); cf. Katsev v. Coleman, 530 F.2d 176, 180-81 n.7 (8th
Cir. 1976) (holding that URA does not guarantee identical
substitute housing for displaced person). In other words, the
Third and Fourth Circuits have held that the URA does not require
that the agency be successful in its relocation assistance. See
American Dry Cleaners, 722 F.2d at 73 (relying on the legislative
history). Nevertheless, no court has yet determined the minimum
amount of assistance required by the Act.
 Although we took a broad approach to applying the
statutory requirements of the URA in Pou Pacheco, our opinion is by
no means inconsistent with the view of the Third and Fourth
Circuits. Pou Pacheco came to us on appeal from a jury trial and
court order to compensate the displaced business under the Uniform
Relocation Act. The Pou Pachecos were forced to relocate their
coffee torrefaction -- a facility for grinding, processing,
warehousing, and selling coffee. Testimony at trial established
that torrefaction equipment slips into disrepair if not regularly
used. Although some equipment was maintained after the first move,
the torrefaction was never fully operational. After the
Commonwealth refused to pay for storage beyond twelve months, Pou
was forced to move his equipment a second time, but unfortunately
was unable to obtain the necessary permits to run his business from
the second location. See Pou Pacheco, 833 F.2d at 395.
 The district court awarded the Pou Pachecos reimbursement
for dismantling expenses, moving expenses, storage rental expenses,
search costs, reinstallation of machinery and equipment, and value
of new equipment and machinery related to both moves. We found
that the jury and the court "were free to fashion the special
relief they did," due to the "delicate nature" of the displaced
business and the fact that the business remained inoperable. Id.
at 400-01. We reasoned that the challenged award was sustainable
against the "background of strong congressional support for the
fair and equitable treatment of displaced persons and businesses,
as well as Congress' expressed willingness to depart from
traditional notions of valuation and eminent domain." Id. at 396.
 We were very clear that our decision was limited to the
unique facts then before us. We made no finding that the
government failed to meet its burden under the URA, and set no
standard by which to measure the adequacy of the government's
assistance. On that issue, we come to the facts of this case with
a clean slate, and agree with our colleagues on the Third and
Fourth Circuits that the government need not provide a suitable
alternate location, but rather must advise displaced businesses of
the availability of such sites. See American Dry Cleaners, 722
F.2d at 73.
 We need not set a threshold level of assistance at this
time because it is clear to us in this instance that the GSA
satisfied its requirements under the Act. In Pietroniro, the Third
Circuit found that reference to five alternative locations and
several local realtors satisfied the URA, despite the fact that
none of the locations were economically feasible. See 764 F.2d at
981; see also American Dry Cleaners, 722 F.2d at 71 (finding
referrals to many possible relocation sites, none of which were
acceptable to the displaced business, sufficient assistance under
the URA). As in Pietroniro, the Cruise Line has not pointed to a
suitable location to which it was not referred by the GSA. See
Pietroniro, 764 F.2d at 982-83. To the contrary, the Cruise Line
admits that the GSA's referrals "may fairly represent then-existing
available facilities." The record suggests that the Cruise Line
was advised of available locations and that assistance was
available, but chose not to avail itself of such services. See
Boston v. United States Dep't of Interior, 424 F. Supp. 259, 267
(E.D. Mo. 1976) (granting summary judgment against plaintiff, who
claimed denial of advisory services, when evidence indicated that
the plaintiff had been advised of services but chose not to seek
them). We empathize with the frustrated sentiments of one
Massachusetts District Court judge who noted:
 Although the hardships faced by the tenant are
 severe, to a large extent they were aggravated
 by the tenant itself. The tenant had nine
 months to find a suitable site for relocation. 
 During that time, it refused to accept the
 prospect of increased rents and face the
 reality of relocation, apparently determined
 to remain in possession of the premises. . . .
 In light of this continued resistance, the
 tenant will not now be heard to complain of
 undue hardship.
United States v. Acre of Land, 577 F. Supp. 236, 238 (D. Mass.
1983).
 The current case comes to us in a very different posture
than Pou Pacheco. We review the GSA award under a deferential
standard and find no evidence that the GSA's decision to exclude
the interim move is arbitrary and capricious or an abuse of
discretion. We must therefore affirm the decision of the district
court on this ground.
 B. REIMBURSABLE EXPENSES
 The Cruise Line requests that it be reimbursed for the
following actual expenses that were classified as reestablishment
expenses by the GSA:

Landing Fees at World Trade Center
$1,825.50

Forwarding of Calls
$1,500.36

Attorney Search Time
$11,353.50

Marine Sanitary System
$3,512.72

Electric and Telephone Hook Up
$2,416.40

Install-Sanitary System
$1,019.44

Backflow Preventer
$310.00

Deck Plates
$1,211.00

Floating Piers
$3,800.00.

These expenses were not reimbursed because they were related to the
interim move or exceeded a regulatory cap.
 The Cruise Line primarily contests the reclassification
of expenses. There are two regulatory caps involved: (1) search
costs are capped at $1,000 and limited to those that are reasonable
and necessary, see 49 C.F.R. 24.303(a)(13); and (2)
reestablishment expenses are capped at $10,000, see 49 C.F.R.
 24.304. The Cruise Line alleges that the GSA arbitrarily
reclassified expenses that were valid uncapped moving expenses so
that they would fall within a regulatory cap. We find, however,
that the GSA considered the pertinent evidence and factors and
articulated an explanation for its action which falls well "within
the bounds of reasoned decision making." Baltimore Gas, 462 U.S.
at 105-06.
 The GSA, relying on the audit, excluded the attorney's
search fees because they exceeded the $1000 cap which had already
been met, and because the attorney's rate of $135/hr was
unreasonable. The regulations entitle the Cruise Line "to
reimbursement for actual expenses, not to exceed $1,000, as the
Agency determines to be reasonable, which are incurred in searching
for a replacement location." 49 C.F.R. 24.303(13). The
provision applies to fees paid to a real estate agent or broker to
locate a site, and they could arguably apply to similar fees paid
to an attorney. Nevertheless, the provision also permits the GSA
to determine whether the fees are reasonable. The appellant has
presented no evidence to suggest that the GSA's determination on
this matter was arbitrary and capricious or an abuse of discretion. 
As the GSA's decision was consistent with the regulations, we defer
to the GSA's judgment.
 In support of its claim that the GSA arbitrarily
reclassified relocation expenses as reestablishment expenses, the
Cruise Line relies on the audit itself, which concludes that
"$23,903 of the total proposed amount were actual paid or incurred
expenses, and were allocable to the permanent relocation of the
claimant." We note, however, that the appellant has pulled the
first sentence of a paragraph out of context. The remainder of the
paragraph indicates that "relocation expenses" is a catch-all
phrase that includes both moving expenses and reestablishment
expenses, which are subject to different monetary limits. The
audit clearly explains that it reclassified $25,184.37 of the
expenses as reestablishment expense to be consistent with the
regulations. The appellant suggests capriciousness in the audit's
decision to reclassify the expenses "for the purpose of maintaining
the integrity of the regulatory limitations." However, we read
this statement as honoring Congress's intent to limit certain
reestablishment expenses which include alterations to the
replacement real property such as those listed by the Cruise Line.
 The distinction between moving expenses and
reestablishment expenses originates with Congress. See 42 U.S.C.
 4622. The regulations have interpreted moving expenses to
include, among other things:
 Disconnecting, dismantling, removing,
 reassembling, and reinstalling relocated
 machinery, equipment, and other personal
 property including substitute personal
 property described at 24.303(a)(12). This
 includes connection to utilities available
 nearby. It also includes modification to the
 personal property necessary to adapt it to the
 replacement structure, the replacement site,
 or the utilities at the replacement site, and
 modification necessary to adapt the utilities
 at the replacement site to the personal
 property.

49 C.F.R. 24.303(a)(3) (emphasis added). In contrast,
reestablishment expenses include:
 (1) Repairs or improvements to the replacement
 real property as required by Federal, State or
 local law, code or ordinance.
 (2) Modifications to the replacement property
 to accommodate the business operation or make
 replacement structures suitable for conducting
 the business.
 . . .
 (4) Provision of utilities from right-of-way
 to improvement on the replacement site.

49 C.F.R. 24.304 (a) (emphasis added). The obvious distinction
between moving and reestablishment expenses is whether
modifications are made to personal property or to the replacement
real property. The GSA's position that the specified expenses are
in fact reestablishment expenses is supported by the record. The
audit concluded that: (1) the marine sanitary system is an
allowable expense under 24.304(a)(2); (2) the electric and
telephone hook up are reestablishment expenses allowable under
 23.304 (a)(4); (3) the installation of the sanitary system is
covered by 23.304(a)(2); (4) the backflow preventer is covered by
 23.304(a)(2); (5) installation of deck plates is allowable under
 23.304(a)(2); and (6) installation of floating piers is allowable
under 23.304(a)(2). We find nothing unreasonable in the GSA's
application of the regulations.
 Instead, the Cruise Line hangs its hat on the argument
that under Pou Pacheco the regulatory caps are guidelines only, and
can be exceeded if there is evidence of unusual expense. 
Unfortunately, the appellant overlooks the distinction in posture
between Pou Pacheco and the current case and its effect on the
standard of review and deference that we afford to the agency's
award. In this case, we may only remand to the district judge if
we find that the GSA acted in an arbitrary and capricious manner,
not if we believe that the regulations could have reasonably been
interpreted differently. In Pou Pacheco, we considered whether a
jury and court award was sustainable -- a related, but
substantially different question, involving a different standard of
review.
 Regardless of the hardship to the Cruise Line that
resulted from its forced relocation from Fan Pier, short of
evidence that the GSA's decision in this case was arbitrary and
capricious, we have no choice but to sustain the district court's
decision that the GSA's award was based on a reasonable 
interpretation of the regulations.
 Affirmed.